# United States Court of Appeals

## For the Eighth Circuit

_____

No. 11-3636

_____

United States of America

*Plaintiff - Appellee*

v.

Douglas Hoffman

*Defendant - Appellant*

_____

No. 11-3778

_____

United States of America

*Plaintiff - Appellee*

v.

Marisol Lopez-Soto, also known as Gladys Lopez, also known as Gladys Lopez-Soto

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa, Waterloo

_____

Submitted: October 19, 2012
Filed: February 14, 2013

_____

Before MURPHY, BYE, and SHEPHERD, Circuit Judges.

_____

BYE, Circuit Judge.

A jury convicted Marisol Lopez-Soto of conspiracy to distribute 500 grams or more of a mixture containing methamphetamine and conspiracy to commit money laundering. On appeal, she contends (1) the evidence was insufficient to support her convictions; (2) the district court[1] erred when it increased her offense level by three for her management role in the money laundering conspiracy offense; (3) her two convictions were improperly grouped together for sentencing purposes; and (4) her sentence of life imprisonment is substantively unreasonable.

Douglas Hoffman pleaded guilty to conspiracy to distribute 500 grams or more of a mixture containing methamphetamine. The district court sentenced him to ninety-three months of imprisonment. He argues the district court denied him his right of allocution regarding a United States Probation Office report detailing his noncompliance with the conditions of his presentence release.

We affirm the judgment of the district court in all respects.

_____

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

-2-

The charges against Lopez-Soto and Hoffman stem from a methamphetamine distribution enterprise in Waterloo, Iowa. Between 2003 and 2009, Joel Antonio Beltran Lopez ("Beltran") and his co-conspirators brought between ten and twenty pounds of methamphetamine per month to Waterloo.

Beginning in September 2007, Lopez-Soto delivered drugs to Beltran's customers with Victor Bustamante, who was Beltran's "right-hand man" and managed the methamphetamine operation when Beltran was not in Waterloo. Because she spoke English and Spanish and Bustamante spoke only Spanish, Lopez-Soto made deals with customers and translated for Bustamante. Lopez-Soto also sold methamphetamine from her home on Beltran's behalf. James Schaefer purchased a pound of methamphetamine on five or six occasions. Anthony Sallis testified he purchased one-half ounce of methamphetamine from Lopez-Soto one or two times per month for approximately three months. Four other people—Heather Tolliver, Michelle Nixon, Robert Webster, and Kyle Geary—all bought methamphetamine either directly from Lopez-Soto or from an intermediary and testified regarding Lopez-Soto's drug trafficking activity. During this time, Lopez-Soto also made a total of seven cross-country trips to Texas and Arizona to deliver drug money, obtain methamphetamine, and transport it back to Waterloo. Beltran paid Lopez-Soto $1,500 per pound of methamphetamine she transported.

Internal Revenue Service (IRS) Special Agent Jeff McGuire testified at Lopez-Soto's trial regarding his investigation of a Wells Fargo bank account in the name of Yesenia Arbelaez, Beltran's wife. Over two-and-one-half years, cash deposits in the account totaled over $300,000. Most of the deposits to the account were made in the Waterloo-Cedar Falls area, and most of the withdrawals occurred in Arizona. McGuire testified the amount of money in the account was "way out of line" compared to Arbelaez's legitimate income, which totaled less than $10,000 per year.

Beltran, who testified against Lopez-Soto at her trial, stated he would call his associates, give them his wife's account number, and direct the associates to deposit less than $10,000 into his wife's account to evade IRS scrutiny. Lopez-Soto made three or four such deposits for Beltran. On at least two other occasions, Beltran asked Alije Dizdarevic to deposit money into Arbelaez's account. Dizdarevic admitted on these occasions, Lopez-Soto drove her to the bank, gave her the money and the account number, and directed her to deposit the money in the bank account.

A jury convicted Lopez-Soto of conspiracy to distribute more than 500 grams of a mixture containing 50 grams or more of pure methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846, and conspiracy to commit money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i), 1956(a)(1)(B)(i), and 1956(h). The district court calculated Lopez-Soto's offense level at 38. It then applied a two-level enhancement for violating 18 U.S.C. § 1956 pursuant to U.S.S.G. § 2S1.1(b)(2)(B) and a three-level enhancement for undertaking a management role in a criminal organization which had five or more participants or was otherwise extensive pursuant to U.S.S.G. § 3B1.1(b). With a total offense level of 43 and a criminal history category of II—Lopez-Soto had a previous felony marijuana importation conviction—the Guidelines recommended a sentence of life imprisonment. The court sentenced Lopez-Soto to life imprisonment on the drug conspiracy charge and the statutory maximum of 240 months on the money laundering charge.

Hoffman pleaded guilty to the same conspiracy to distribute methamphetamine charge of which Lopez-Soto was convicted. The district court computed his base offense level at 36. After applying several reductions, the court arrived at a Guidelines range of 87 to 108 months. At the beginning of the sentencing hearing, the court stated it had received a report from the United States Probation Office which indicated Hoffman had failed to comply with several conditions of his supervised presentence release. Among them, he did not call his Probation Officer every

Monday and did not pay the costs of electronic monitoring. The court did not seek comments from counsel regarding this report. Proceeding with the sentencing hearing, the court gave Hoffman a chance to allocute, and he did so. Hoffman did not discuss the Probation Office report in his remarks. The court then stated although it might ordinarily consider a departure or variance, Hoffman's noncompliance with his presentence release conditions, among other things, compelled it to impose a within-Guidelines sentence. The court sentenced Hoffman to ninety-three months of imprisonment.

II

A. Sufficiency of the Evidence

Lopez-Soto contends the evidence the government presented at trial was insufficient to sustain her conviction because the government supported its case with testimony from indicted drug dealers who sought to minimize their prison sentences. She also objects to the lack of direct evidence showing she deposited money into Arbelaez's bank account.

We review a challenge to the sufficiency of the evidence de novo, viewing the evidence in the light most favorable to the guilty verdict and granting the verdict the benefit of all reasonable inferences. United States v. Zierke, 618 F.3d 755, 760 (8th Cir. 2010) (quotation and citation omitted). If a reasonable jury could have found Lopez-Soto guilty, we must affirm her conviction. Id. (quotation and citation omitted).

To sustain Lopez-Soto's conspiracy conviction, the government was required to prove (1) a conspiracy existed to distribute methamphetamine; (2) Lopez-Soto knew of the conspiracy; and (3) Lopez-Soto intentionally joined the conspiracy. See United States v. Becker, 534 F.3d 952, 957 (8th Cir. 2008). The government

presented the testimony of nine co-conspirators, each of whom testified about Lopez-Soto's role in Beltran's drug trafficking operation. Their testimony established Lopez-Soto ran the operation when Bustamante was gone, sold methamphetamine from her home, collected drug money owed to Beltran, and made cross-country trips to obtain methamphetamine. This evidence is more than sufficient to satisfy the three required elements to convict. Lopez-Soto's objection to the government's use of indicted drug dealers to support its case amounts to a challenge to the credibility determinations made by the jury. The jury heard and credited the testimony of the government's witnesses, and its findings are "virtually unreviewable on appeal." United States v. Boyce, 564 F.3d 911, 916 (8th Cir. 2009) (quotation and citation omitted). Lopez-Soto's argument is without merit.

So too with Lopez-Soto's challenge to her conspiracy to commit money laundering conviction. "[T]he three essential elements of conspiracy to launder money are (1) an agreement . . . to launder money; (2) the defendant's voluntary joinder of the agreement; and (3) the defendant's knowing joinder of the agreement." United States v. Jarrett, 684 F.3d 800, 802 (8th Cir. 2012) (quotation and citation omitted). On at least three occasions, Beltran asked Lopez-Soto to make deposits into Arbelaez's bank account. Lopez-Soto also mentioned to Kyle Geary that Beltran was waiting on her to make a deposit. Moreover, Lopez-Soto supervised Dizdarevic when Dizdarevic made deposits. The co-conspirators limited their deposits to less than $10,000 in an attempt to conceal their drug trafficking activity. Viewed in the light most favorable to the verdict, this is sufficient evidence from which a reasonable jury could conclude Lopez-Soto knowingly and voluntarily joined an agreement to launder money.

B. Management Enhancement

Section 3B1.1(b) provides, "[i]f the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants

or was otherwise extensive, increase by 3 levels." Lopez-Soto does not dispute the conspiracy had five or more participants. Instead, she argues she was not a "manager or supervisor" because Dizdarevic, whom the district court found Lopez-Soto supervised, participated in the conspiracy prior to Lopez-Soto's involvement. Lopez-Soto contends she could not supervise someone whose involvement preceded her own.

We review the district court's findings of fact for clear error and its application of the Guidelines de novo. United States v. Woods, 670 F.3d 883, 886 (8th Cir. 2012) (quotation and citation omitted). We first determine whether the district court committed any procedural error, including "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." Gall v. United States, 552 U.S. 38, 51 (2007). If the sentence is procedurally sound, we then "consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." Id. Lopez-Soto, however, failed to object to the application of the enhancement at sentencing. "If a defendant fails to timely object to a procedural sentencing error, the error is forfeited and may only be reviewed for plain error." United States v. Phelps, 536 F.3d 862, 865 (8th Cir. 2008). "Under plain error review, the defendant must show: (1) an error; (2) that is plain; and (3) that affects substantial rights." Id.

Application note 4 of U.S.S.G. § 3B1.1 provides the factors to consider when determining if the enhancement is appropriate:

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope

of the illegal activity, and the degree of control and authority exercised over others.

We have defined the terms "manager" and "supervisor" broadly and have held a defendant need only have managed or supervised one other person to qualify for the enhancement. United States v. Lopez, 431 F.3d 313, 317-18 (8th Cir. 2005). Likewise, the enhancement may apply even if the management or supervisory activity was confined to a single transaction. United States v. Garrison, 168 F.3d 1089, 1096 (8th Cir. 1999).

The government presented evidence at sentencing which demonstrated Lopez-Soto directed Dizdarevic's activities on at least two occasions. Dizdarevic admitted in her post-arrest interview that when she deposited money into Arbelaez's account, Lopez-Soto drove her to the bank, gave her the money and the account number, and instructed her on the proper procedure to make the deposit. Moreover, we have previously considered and rejected the argument that criminal activity by other participants prior to the time the defendant joined the conspiracy precludes the defendant from managing those prior participants. See United States v. Mendoza, 341 F.3d 687, 693-94 (8th Cir. 2003). Given this evidence, we cannot say the district court plainly erred when it adjusted Lopez-Soto's sentence by three levels for her management role in the conspiracy.

C. Grouping of Counts

Lopez-Soto also contends the district court unlawfully grouped her two counts, allowing the court to circumvent the 240-month statutory maximum on her money laundering conspiracy count. See 18 U.S.C. § 1956(a).

Failing to calculate the proper Guidelines range is a procedural error. Gall, 552 U.S. at 51.  Again, we review the district court's application of the Guidelines de novo.  Woods, 670 F.3d at 886.

When a defendant has been convicted of more than one count, U.S.S.G. § 3D1.1(a)(1) instructs a sentencing court to "[g]roup the counts resulting in conviction into distinct Groups of Closely Related Counts . . . by applying the rules specified in § 3D1.2."  Section 3D1.2 requires a sentencing court to group a defendant's counts when those counts "involve substantially the same harm."  Counts involve substantially the same harm "[w]hen one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts."  U.S.S.G. § 3D1.2(c).  Following the recommendation of the Presentence Investigation Report (PSR), the district court relied on this subsection to group Lopez-Soto's two counts.

The district court imposed the specific offense characteristic in U.S.S.G. § 2S1.1(b)(2)(B), which mandates a two-level increase if the defendant was convicted of violating 18 U.S.C. § 1956.  The PSR states Lopez-Soto was convicted of conspiring to violate 18 U.S.C. 1956 § (a)(1)(A)(i) and 18 U.S.C. § 1956 (a)(1)(B)(i). See 18 U.S.C. § 1956(h) ("Any person who conspires to commit any offense defined in this section . . . shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy.").  A defendant violates 18 U.S.C. 1956 § (a)(1)(A)(i) if she, "knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity . . . with the intent to promote the carrying on of specified unlawful activity."  Here, the money obtained from the methamphetamine distribution enterprise constitutes the "proceeds" from "unlawful activity."  Because Lopez-Soto conspired to launder the money that derived from the unlawful methamphetamine distribution conspiracy, her drug conspiracy count

embodies conduct that is treated as a specific offense characteristic in her money laundering conspiracy count. We therefore find no error in the district court's grouping of the two counts pursuant to U.S.S.G. § 3D1.2(c).

D. Substantive Reasonableness

Finally, Lopez-Soto argues the life sentence she received from the district court is substantively unreasonable. Lopez-Soto notes she has no violent criminal history and because she used her sister's name to obtain employment in the United States, she is subject to removal from the country upon her release from prison. Further, she contends the district court gave insufficient weight to her difficult upbringing and personal circumstances during its consideration of the 18 U.S.C. § 3553(a) factors.

We review a challenge to the substantive reasonableness of a sentence for an abuse of discretion. Gall, 552 U.S. at 51. "[A]n abuse of discretion occurs where the sentencing court fails to consider a relevant factor that should have received significant weight, gives significant weight to an improper or irrelevant factor, or considers only the appropriate factors but commits a clear error of judgment in weighing those factors." United States v. Bryant, 606 F.3d 912, 921 (8th Cir. 2010) (quotation and citation omitted). If a sentence is within the properly calculated Guidelines range, we presume it is substantively reasonable. Id.

At sentencing, the district court considered the § 3553(a) factors and explained its decision to sentence Lopez-Soto to life imprisonment. The court observed Lopez-Soto was undeterred by a previous conviction for marijuana importation. It noted Lopez-Soto's criminal conduct had escalated from marijuana importation to participation in a larger organization which dealt greater quantities of drugs. It also cited Lopez-Soto's theft of her sister's identity to gain entry to the country. The district court chose to assign greater weight to the nature and circumstances of the offense rather than the mitigating personal characteristics Lopez-Soto presented at

-10-

sentencing. That choice "is well within the wide latitude [given] to individual district court judges in weighing relevant factors." United States v. Wisecarver, 644 F.3d 764, 774 (8th Cir. 2011) (quotation and citation omitted), *cert. denied*, 132 S. Ct. 533 (2011). A life sentence is doubtless severe, but it is not substantively unreasonable. The district court did not abuse its discretion when it sentenced Lopez-Soto to life imprisonment.

III

Hoffman argues the district court denied him his right to allocute when it did not ask Hoffman if he had any objections to a United States Probation Office report which detailed Hoffman's noncompliance with some terms of his presentence release. Hoffman further argues the district court improperly relied on the Probation Office report to determine the duration of his sentence.

The denial of the right to presentence allocution is a significant procedural error. United States v. Azure, 539 F.3d 904, 912 (8th Cir. 2008) (quotation and citation omitted). Hoffman, however, did not preserve this issue by timely objecting to the alleged denial during the sentencing hearing. Accordingly, we review his claim for plain error. Black, 670 F.3d at 881 (quotation and citation omitted).

Federal Rule of Criminal Procedure 32(i)(4)(A)(ii) provides, "[b]efore imposing sentence, the court must . . . address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence." A defendant's right to allocute is "strictly enforced," United States v. Robinson, 537 F.3d 859, 862 (8th Cir. 2008), but it is not a constitutional right. United States v. Purkey, 428 F.3d 738, 761 (8th Cir. 2005).

At the beginning of Hoffman's sentencing hearing, the district court indicated it had read the PSR and had before it a motion for a downward variance. It also

mentioned the Probation Office report and briefly outlined its contents: Hoffman, among other things, failed to report to his probation officer on at least four occasions and did not pay the costs of electronic monitoring. It solicited counsels' comments regarding the PSR but not the Probation Office report. It then addressed Mr. Hoffman, telling him, "this is the time in the proceeding when you have a chance to speak. You don't have to say anything, if you don't want to." Hoffman apologized to the court and his family and spoke of his rehabilitation through his church. The court then asked Hoffman a series of questions regarding his rehabilitation and a pending marijuana charge he faced. At the conclusion of this exchange, the court stated it would not vary because it did not believe Hoffman was rehabilitated and because Hoffman had performed poorly while on presentence release. Hoffman tried to interject as the court made this statement, but the court replied, "I'm in the middle of talking. If you had something to say, you had your chance."

The record shows the court met its obligation under Rule 32(i)(4)(A)(ii). We have found no error as long as the court gives the defendant an opportunity to speak prior to the imposition of sentence. United States v. Barrett, 552 F.3d 724, 728 (8th Cir. 2009); Robinson, 537 F.3d at 863. The district court did exactly that. Hoffman's claim he was blindsided by the contents of the report is undercut by the fact that the court stated the report's contents before the court gave Hoffman the opportunity to speak. Hoffman could have addressed the report in his remarks, but he chose not to do so. Moreover, to the extent Hoffman claims the district court improperly relied on the report during sentencing, his claim is unpersuasive. A sentencing court has "wide discretion" to consider "any relevant information that may assist the court in determining a fair and just sentence." United States v. Gant, 663 F.3d 1023, 1030 (8th Cir. 2011). The Probation Office report is not outside the scope of this discretion. Hoffman is not entitled to plain error relief.

IV

The judgment of the district court is affirmed.

_____