United States Court of Appeals

For the Eighth Circuit

_____

No. 12-3813

_____

United States of America

*Plaintiff - Appellee*

v.

Alireza Bakhtiari

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: April 11, 2013
Filed: May 8, 2013
[Published]

_____

Before MURPHY, BEAM, and BYE, Circuit Judges.

_____

PER CURIAM.

Alireza Bakhtiari pleaded guilty to one count of obstructing an official proceeding in violation of 18 U.S.C. § 1512(c)(2). The district court[1] sentenced him

_____

[1]The Honorable E. Richard Webber, United States District Judge for the Eastern District of Missouri.

to fifty-one months in prison and three years of supervised release. Bakhtiari raises four challenges to his sentence. We reject his arguments and affirm.

I

From 2009 to 2012, B.H., a St. Louis lawyer, defended the same corporate client in three pro se lawsuits brought by Bakhtiari. The first two lawsuits settled. In the third suit, for defamation, B.H. came to suspect that Bakhtiari had forged the allegedly defamatory emails "sent" by B.H.'s client on its letterhead. According to B.H., Bakhtiari sent the emails, which accused Bakhtiari of sex trafficking, in an attempt to manufacture facts which would give rise to a defamation suit. B.H. filed a motion to inspect computer equipment Bakhtiari possessed. The district court granted the motion and ordered Bakhtiari to make his computer equipment available within fourteen days. Bakhtiari did not comply. B.H. then filed a motion for sanctions and contempt against Bakhtiari, informing the court of Bakhtiari's non-compliance.

The next day, B.H. received an email at his work address. The sender was an account opened in his son's and daughter-in-law's names. The email, titled, "Eric and Jamie sitting in a tree," called B.H. offensive terms and included six attached photographs: three of B.H.'s house, two of B.H.'s son and daughter-in-law, in which a rifle cross-hairs had been imposed upon their faces, and one of a young girl who the file name referred to as, but in fact was not, B.H.'s daughter. B.H. was upset. He took the email as an implied threat against his family. He referred the email to the U.S. Attorney's office, and an investigation began.

Three days later, G.F., B.H's law partner, went to Bakhtiari's house to inspect the equipment described in the court order. A computer consultant and court reporter joined them. While they were at the house, Bakhtiari drew G.F. into a bedroom, at which time he pulled out a hunting rifle with an affixed scope from under his bed. He

opened the bolt action of the rifle, ejected a bullet from the chamber, and asked G.F. if he wanted it. G.F. declined and left the room. G.F., who was aware of the email sent to B.H., took the display of the rifle as a message that Bakhtiari had sent the email and was willing to carry out his implied threat.

Authorities continued to investigate. They executed a federal search warrant on Bakhtiari's workplace computer, where they discovered photographs of B.H.'s son and daughter-in-law, with and without the cross-hairs. They also discovered the threatening email had been sent from a server at a hotel in rural Missouri. Bakhtiari's personal cellular phone had "hit" on cell towers near the hotel around the time the email was sent.

A grand jury indicted Bakhtiari for sending a threatening communication in interstate commerce in violation of 18 U.S.C. § 875(c). Bakhtiari represented himself at trial, with hybrid counsel also present. On May 29, 2012, Bakhtiari filed a "Motion To Dismiss Indictment On The Basis Of Governmental Misconduct." The motion alleged the federal agents who arrested Bakhtiari subjected him and his then-girlfriend to "torture" and "sexual abuse," including shackling them naked to furniture inside Bakhtiari's home. Bakhtiari brought this motion only after he was unable to reach a plea agreement with the government. Several photographs taken during the execution of the search warrant and arrest showed Bakhtiari and his then-girlfriend clothed and seated comfortably.

Government counsel notified Bakhtiari's hybrid counsel that Bakhtiari could be subject to additional charges for perjury, false statements, and obstruction of justice for his false allegations against federal agents. Bakhtiari then pleaded guilty to obstruction of justice in violation of 18 U.S.C. § 1512(c)(2). He swore he had forged the "defamatory" documents in the civil lawsuit B.H. defended, he had caused the threatening email to be sent to B.H., and he had fabricated the "torture" allegations against federal officials. In exchange, the government dropped the threatening

communication in interstate commerce charge and declined to bring additional charges. The stipulation of facts in the plea agreement, which included these admissions, was read into the record at the plea colloquy.

After his guilty plea, however, Bakhtiari made several statements denying he was guilty of the crime to which he had pleaded guilty. For example, he told the local newspaper his former employer was responsible for sending the threatening email, and did so to retaliate against Bakhtiari for "blowing the whistle" on the St. Louis City Water Division regarding elevated levels of chlorine in St. Louis water. In his pro se objections to the Presentence Investigation Report (PSR), Bakhtiari also stated he only "inadvertently" caused the sending of the threatening email and did not intend to intimidate anyone or obstruct the civil suit by displaying the hunting rifle to G.F.

The PSR recommended the imposition of an eight-level enhancement for threatening to cause physical injury to the person of another, United States Sentencing Guidelines Manual ("U.S.S.G.") § 2J1.2(b)(1)(B), and a two-level enhancement for offense conduct that was extensive in scope, planning, and preparation. Id. § 2J1.2(b)(3)(C). Although the PSR initially recommended a three-level reduction for acceptance of responsibility, the final version of the Report recommended revoking the reduction because of Bakhtiari's statements purporting to deny responsibility. At the conclusion of the sentencing hearing, the court imposed the two enhancements and denied the reduction. With a total Offense Level of 24 and a Criminal History Category of I, Bakhtiari's advisory guidelines range was 51-63 months. The district court sentenced Bakhtiari to 51 months, the bottom end of the range. Bakhtiari appealed.

II

Bakhtiari challenges the application of the two enhancements and the denial of the reduction. He also claims his within-guidelines sentence is substantively unreasonable.

A.    Obstruction of Justice

Section 2J1.2(b)(1)(B) mandates an eight-level enhancement "[i]f the offense involved causing or threatening to cause physical injury to a person, or property damage, in order to obstruct the administration of justice." Bakhtiari argues the email and display of the rifle were not threats. Rather, they were intended, at most, to "intimidate and chill B.H.'s advocacy on behalf of his client [in the defamation suit]." Appellant's Br. 12. His actions are the kind of "lesser threats" U.S.S.G. § 2J1.2(b)(1)(B) does not include. United States v. Sanchez, 676 F.3d 627, 632 (8th Cir. 2012) (citing United States v. Duarte, 28 F.3d 47, 48 (7th Cir. 1994) (stating § 2J1.2(b)(1)(B) "distinguish[es] threats of physical injury or property damage from lesser threats")). We review the district court's factual findings with regard to the enhancement for clear error and its interpretation and application of the guidelines de novo. United States v. Hoffman, 707 F.3d 929, 935 (8th Cir. 2013).

Bakhtiari went to great lengths to discover information about B.H.'s family, including taking photographs of his house, findings photographs of his children online, doctoring the photographs to add the cross-hairs, writing a menacing email, and displaying a loaded rifle to B.H.'s law partner. The message was clear: Bakhtiari purported to harm B.H.'s family and portrayed himself as willing to execute the threat if B.H. continued to pursue his belief that Bakhtiari had falsified the defamatory letters. To the extent Bakhtiari argues these actions were not "serious" enough to merit the enhancement, we observe the "language [of § 2J1.2(b)(1)(B)] does not impose an additional 'seriousness' requirement beyond the fact of a violent threat."

United States v. Plumley, 207 F.3d 1086, 1090 (8th Cir. 2000). The district court correctly imposed the enhancement.

B.     Scope of Offense

Section 2J1.2(b)(3)(C) provides a two-level upward adjustment if the defendant's offense was "extensive in scope, planning, or preparation." Bakhtiari argues the only evidence of his planning or preparation is the photographs of B.H.'s son and daughter-in-law Bakhtiari downloaded. Bakhtiari never admitted he doctored the photographs with the cross-hairs, created an anonymous email account, or caused the email to be sent through the Missouri hotel's server. Visiting a website and displaying a rifle are not "extensive," he claims.

Reviewing factual findings for clear error and legal applications de novo, Hoffman, 707 F.3d at 935, we once again conclude Bakhtiari is mistaken. As noted above, Bakhtiari engaged in extensive planning to obtain the photographs of B.H.'s house and family members, create a false email account, and otherwise plan and disguise his actions. Although we can locate no Eighth Circuit caselaw heretofore applying this enhancement, Bakhtiari's conduct is no narrower in scope than the conduct of other defendants whose sentences have been enhanced in other circuits. See United States v. Rodriguez, 499 F. App'x 904, 909 (11th Cir. 2012) (per curiam) (unpublished) (applying the enhancement to a prison inmate who preserved a semen stain on her clothing and falsely claimed three times she was sexually assaulted by a corrections officer), *cert. denied*, 81 U.S.L.W. 3580 (Apr. 15, 2013); United States v. Jensen, 248 F. App'x 849, 851 (10th Cir. 2007) (applying the enhancement to a prison official who gave numerous inmates clean urine samples in exchange for sexual favors). We see no error in the district court's application of the enhancement.

C.    Acceptance of Responsibility

Section 3E1.1 provides a two-level reduction if the defendant "clearly demonstrates acceptance of responsibility for his offense." The defendant may receive an additional one-level reduction upon the government's motion. The plea agreement Bakhtiari signed initially provided him the full three-level reduction, unless "the government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with the defendant's eligibility for this deduction." Plea Agr. 6. Bakhtiari claims he held true to his statements in the plea agreement and was improperly denied the three-level reduction as a result. We review the denial of an acceptance-of-responsibility reduction for clear error. United States v. Tonks, 574 F.3d 628, 632 (8th Cir. 2009) (quotation and citation omitted).

Bakhtiari is wrong again. First, Bakhtiari retreated from his admission in the plea agreement that he had sent the email. At the sentencing hearing, Bakhtiari advanced the false theory that he had "inadvertently and indirectly" caused the email to be sent, but it was principally sent by his enemies at the St. Louis City Water Division. Bakhtiari also revived his false allegation of "torture" and "sexual abuse," telling the court his allegations were "not out-and-out false." Sent. Tr. 128. A defendant, like Bakhtiari, who admits but later recants guilt is not entitled to an acceptance-of-responsibility reduction. See United States v. Shade, 661 F.3d 1159, 1167 (8th Cir. 2011). Second, Bakhtiari refused to express remorse or responsibility for his actions. As the district court said to Bakhtiari,

> I haven't heard one single verb from you that you're accepting responsibility. I expected when you got up here you would turn to [B.H.] and say: "I'm deeply sorry for all the grief that I have caused you." Instead, you start lecturing him about his responsibility as a jurist to – that's bizarre to me. Just bizarre.

Sent. Tr. 143. We have held a defendant who goes on a "rant" denying responsibility for his actions does not express the sincere remorse required for the reduction. United States v. Wineman, 625 F.3d 536, 539 (8th Cir. 2010). Bakhtiari's actions fit the mold of Shade and Wineman. The district court correctly denied the reduction for acceptance of responsibility.

D.    Substantive Reasonableness

Finally, Bakhtiari contends his sentence is substantively unreasonable. We review the substantive reasonableness of a sentence for abuse of discretion. Gall v. United States, 552 U.S. 38, 51 (2007).

Bakhtiari is an Iranian-born Christian who fled to the United States to escape persecution. He is thirty-six years old and has a wife with lupus and three minor children who depend on him for support. He has been continuously employed since his arrival in the United States and has no history of violent or criminal conduct. Bakhtiari contends the district court insufficiently weighed these mitigating personal characteristics when it meted out his sentence.

A sentence within the guidelines range is presumptively reasonable. United States v. Bordeaux, 674 F.3d 1006, 1010 (8th Cir. 2010) (per curiam) (quotation and citation omitted). The district court considered the 18 U.S.C. § 3553(a) factors and chose to assign greater weight to the nature of the offense than the mitigating personal characteristics Bakhtiari presented. That choice "is well within the wide latitude [given] to individual district court judges in weighing relevant factors." United States v. Wisecarver, 644 F.3d 764, 774 (8th Cir. 2011) (quotation and citation omitted), *cert. denied*, 132 S. Ct. 533 (2011). The district court did not err when it sentenced Bakhtiari to fifty-one months, the low end of the guidelines range.

## III

We affirm the judgment of the district court.

_____