UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Felton, Judges Humphreys and Kelsey
Argued by teleconference

JOSEPH WILEY

MEMORANDUM OPINION[*] BY
v.     Record No. 1136-12-4                    JUDGE D. ARTHUR KELSEY
JULY 9, 2013

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
Joanne F. Alper, Judge

Helen Randolph, Assistant Public Defender (Office of the
Public Defender, on briefs), for appellant.

David M. Uberman, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


After the trial court revoked Joseph Wiley's suspended sentences at his third probation

violation hearing, Wiley requested permission to "say something." App. at 122. The trial court

explained that it had already ruled and ended the proceeding without hearing further from Wiley.

On appeal, Wiley contends the court violated his right to allocute. He also challenges the

imposition of his suspended sentences as an abuse of discretion. We hold the trial court erred in

neither regard.

I.

In 2007, Wiley pled guilty to felony shoplifting in violation of Code § 18.2-103 and

possession of burglary tools in violation of Code § 18.2-94. The trial court sentenced him to

concurrent terms of three years in prison, of which all but four months were suspended. Within

four months of the sentencing hearing, Wiley was again arrested for felony shoplifting from the

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

same store he had previously been convicted of shoplifting from.  In 2008, Wiley pled guilty and the trial court sentenced him to five years with all but twelve months suspended on the new charge.  The court revoked and resuspended the previous sentences imposed in 2007.

In 2010, the trial court found Wiley had violated the terms of his probation by not keeping in regular contact with his probation officer.  At the revocation hearing, the court engaged Wiley in a lengthy colloquy concerning the court's expectations.  At the end of this colloquy, the court sought to confirm Wiley's understanding of his responsibilities:

> Court:  So you understand -- but let me ask you this, Mr. Wiley:
> You do understand once you are released what you need to
> do to avoid coming back here?
>
> Wiley:  I know exactly what I need to do.
>
> Court:  Because one misunderstanding --
>
> Wiley:  I know, exactly.
>
> Court:  -- but next time, you know --
>
> Wiley:  Right.
>
> Court:  -- it's going to be a lot harder.
>
> Wiley:  I know, exactly.
>
> Court:  Okay.  That's all I need to know.

App. at 106.  The trial court then entered an order revoking and resuspending his several terms of incarceration.

In 2011, Wiley's probation officer reported that Wiley failed to keep in contact with his probation officer, moved out of state without the permission of the probation officer, failed to appear on outstanding warrants issued by the Arlington County General District Court, and failed to provide proof that he attended substance abuse counseling.  "This is Mr. Wiley's third

violation of probation," the probation officer stated. Id. at 2. The probation officer concluded that Wiley's "disregard for supervision makes him a risk to public safety" because he "is not amenable to Community Supervision." Id.

At the revocation hearing in May 2012, the court heard extensive proffers from Wiley's counsel and the prosecutor. Wiley's counsel did not ask to present evidence or to call Wiley to testify on his own behalf. After hearing the proffers, the court stated:

> I've been dealing with this case for a number of years now, and it seems like we keep getting the same issue with Mr. Wiley. That is, you know, basically catch me if you can. . . . [B]ased upon his entire history with this case, and the probation officer's concerns as well, I do not think he's amenable for supervision. I think if I sent him out of here with a stern warning, as I did the last time; and I'm sure I said for the second violation, one more violation and that's it. The bottom line is the same thing would happen again, and I'm not going to take any more of the probation officer's time or taxpayers' expenses for that.

Id. at 119-21. The court then revoked Wiley's remaining suspended sentences and ordered that they be served in full. Immediately after the court ruled, Wiley asked, "Can I say something?" Id. at 122. The court responded, "I've already made my decision, sir." Id. Wiley's counsel did not object to the court's response, nor did he proffer what Wiley would have said if he had been allowed speak.

II.

On appeal, Wiley makes two arguments. He first contends that both constitutional due process principles and Code § 19.2-298 guarantee him a right to allocution in probation revocation hearings. See Appellant's Br. at 3. The trial court violated that right, Wiley asserts, when it refused to allow him to "say something," App. at 122, after the court ruled on his probation violation. Second, Wiley asserts that the court abused its discretion by revoking the balance of his suspended sentences for violating the terms of probation. See Appellant's Br. at 3.

- 3 -

A. ALLOCUTION & PROBATION REVOCATION

Allocution permits a criminal defendant an opportunity to speak his peace just before a court imposes his sentence. The common law right of allocution developed in England during an era in which a criminal defendant could not testify in his own behalf. See McGautha v. California, 402 U.S. 183, 217 n.20 (1971). In 18th century common law courts, "[a]llocution therefore afforded a convicted defendant with his only opportunity to address the court." Green v. French, 143 F.3d 865, 881 (4th Cir. 1998), abrogated on other grounds by Williams v. Taylor, 529 U.S. 362 (2000). The ameliorating purpose of allocution has far less impact today given a defendant's right to testify in his own behalf, both during the trial and sentencing stages of a criminal proceeding.[1] But even if "the common law reasons or uses for allocution have long since disappeared," Paul W. Barrett, Allocution, 9 Mo. L. Rev. 232, 254 (1944), the right of allocution survives in many states either in its common law form or by statute.

Under settled law, a trial judge's failure to *invite* a presentence allocution "is an error which is neither jurisdictional nor constitutional. It is not a fundamental defect which inherently results in a complete miscarriage of justice, nor an omission inconsistent with the rudimentary demands of fair procedure." Hill v. United States, 368 U.S. 424, 428 (1962). Like a multitude of other courts, we have taken the point further by concluding "there is no constitutional right to

---

[1] See Rock v. Arkansas, 483 U.S. 44, 49 (1987) ("At this point in the development of our adversary system, it cannot be doubted that a defendant in a criminal case has the right to take the witness stand and to testify in his or her own defense."); McGautha, 402 U.S. at 218-19 ("Assuming, without deciding, that the Constitution does require such an opportunity" for the accused "to present evidence or argument presumably relevant to the issues involved in sentencing."); see also Code § 19.2-268 ("In any case of felony or misdemeanor, the accused may be sworn and examined in his own behalf . . . .); Code § 19.2-295.1 ("After the Commonwealth has introduced in its case-in-chief of the sentencing phase such evidence of prior convictions or victim impact testimony, or both, or if no such evidence is introduced, the defendant may introduce relevant, admissible evidence related to punishment.").

an allocution before sentencing." Montgomery v. Commonwealth, 56 Va. App. 695, 700, 696

S.E.2d 261, 263 (2010) (citing Hill, 368 U.S. at 428); see also United States v. Hoffman, 707

F.3d 929, 937 (8th Cir. 2013) (holding allocution "is not a constitutional right"); Green, 143 F.3d

at 880-81 (citing "many lower courts" which reject the claim of a "constitutional right to

allocution").[2]

Thus, to the extent a defendant has a right to allocute, it must arise either under the

common law or by statute. Wiley says it arises under both and applies to a probation revocation

proceeding. We are skeptical of these assertions.

Suspended sentences did not exist under English common law at the time of the Founding

of our Commonwealth, Taylor v. Commonwealth, 58 Va. App. 435, 444-45, 710 S.E.2d 518,

522-23 (2011), and, of course, neither did probation revocation proceedings. The common law

recognized the right of allocution only at the time of the initial sentencing.[3] Perhaps the common

---

[2] Green acknowledged that a panel of the Fourth Circuit had stated in 1978, without any precedential or analytical support, that the denial of a request for allocution "is a denial of due process" rights, presumably under the Federal Constitution. Green, 143 F.3d at 882 (citing Ashe v. North Carolina, 586 F.2d 334, 336 (4th Cir. 1978)). Green rejected this unsupported assertion, as do we, as non-binding *dicta* and found it inconsistent with the consensus view of the majority of "other state and federal courts." Id.

[3] Some courts and scholars have even suggested that the historic common law right of allocution applied only to cases involving capital punishment. See McGrady v. Cunningham, 296 F.2d 600 (4th Cir. 1961) ("It was indispensably necessary at common law in capital cases that a defendant should be asked before sentence if he had anything to say why sentence of death should not be pronounced against him." (internal quotation marks and citation omitted)); Shelton v. State, 744 A.2d 465, 491 (Del. 1999) ("Allocution is a historic common-law right of a defendant in a capital case."); Tomlinson v. State, 647 P.2d 415, 416 (N.M. 1982) ("Historically . . . the common law doctrine of allocutus provided the defendant an opportunity to speak on why the sentence of death should not be imposed."); Thomas J. Sullivan, The Capital Defendant's Right to Make a Personal Plea for Mercy: Common Law Allocution and Constitutional Mitigation, 15 N.M. L. Rev. 41, 56-57 (1985) ("As applied in capital cases, the right of allocution afforded a capital defendant forced to proceed without the benefit of counsel the opportunity to express any reason why the court should not pronounce sentence after conviction."). Historical sources seem to support this limitation. See Anonymous, 87 Eng. Rep. 175, 3 Mod. 265 (1689) (reversing an attainder after "it [did] not appear that the party was asked

law context could still could be analogized to modern revocation hearings, but the analogy would be weak at best.  A revocation proceeding is hybrid in nature.  While it has some attributes of a criminal proceeding, it "is not a trial for the commission of a new criminal offense," Slayton v. Commonwealth, 185 Va. 357, 366, 38 S.E.2d 479, 483 (1946), and thus "not entitled to the same due process protections afforded a defendant in a criminal trial," Downey v. Commonwealth, 59 Va. App. 13, 20, 716 S.E.2d 472, 475 (2011) (internal quotation marks and citation omitted).

Maybe so, Wiley counters, but he still can claim a statutory right of allocution under Code § 19.2-298.  That statute requires allocution before "pronouncing the sentence" in criminal cases in which the defendant has been found guilty.  By its own terms, however, Code § 19.2-298 does not mention probation violation hearings.  On the contrary, Code § 19.2-306, entitled "Revocation of suspension of sentence and probation," does mention probation violation hearings, but makes no reference to allocution.  Wiley argues the general language of  Code § 19.2-298, recognizing allocution, trumps the more specific language of Code § 19.2-306, which is silent on the subject.  The Commonwealth, on the other hand, contends Code § 19.2-306's silence, given its role as the more specific statute governing revocations, trumps the express grant of allocution rights recognized by the general language of  Code § 19.2-298.

While these issues are interesting and important, we need not resolve them in this case. We prefer instead to adhere to our traditional practice of relying upon "'the best and narrowest

---

what he could say why the sentence of death shall not pass upon him"); Rex & Regina v. Geary, 91 Eng. Rep. 532, 2 Salk. 630 (K.B. 1689-1712) (same); The King v. Speke, 91 Eng. Rep. 872, 3 Salk. 359 (K.B. 1689-1712) (same); 4 William Blackstone, Commentaries of the Laws of England *375 (1753) ("For when, *upon a capital charge*, the jury have brought in their verdict guilty, in the presence of the prisoner, he is, either immediately, or at a convenient time soon after, asked by the court if he has any thing to offer why judgment should not be awarded against him." (emphasis added)); 1 Joseph Chitty, Criminal Law *699-700 (1819) ("It is now indispensably necessary, even in clergyable felonies, that the defendant should be asked by the clerk if he has any thing to say why judgment of death should not be pronounced on him . . . .").

ground available' for our decision," Morris v. City of Va. Beach, 58 Va. App. 173, 180, 707 S.E.2d 479, 482 (2011) (quoting Armstead v. Commonwealth, 56 Va. App. 569, 576, 695 S.E.2d 561, 564 (2010)), and of resolving cases "on what we conceive to be the determinative points," id. (quoting Justice Herbert B. Gregory, Shorter Judicial Opinions, 34 Va. L. Rev. 362, 365 (1948)).  "This approach encourages judicial self-restraint by avoiding the resolution of broad, reasonably debatable legal issues when narrower, less debatable legal issues fully dispose of the appeal before the court."  Foltz v. Commonwealth, 58 Va. App. 107, 114, 706 S.E.2d 914, 918 (2011) (*en banc*), aff'd on other grounds, 284 Va. 467, 732 S.E.2d 4 (2012).

This principle is particularly important here because — even if Wiley had a common law or statutory right to allocution — we must nevertheless determine whether any alleged violation would be harmless.  Code § 8.01-678 makes "harmless-error review required in *all* cases." Ferguson v. Commonwealth, 240 Va. ix, ix, 396 S.E.2d 675, 675 (1990) (emphasis in original and text in parenthetical to statutory citation).  The harmless error doctrine "puts a limitation on the powers of this court to reverse the judgment of the trial court — a limitation which we must consider on every application for an appeal and on the hearing of every case submitted to our judgment."  Walker v. Commonwealth, 144 Va. 648, 652, 131 S.E. 230, 231 (1926); see also Kirby v. Commonwealth, 50 Va. App. 691, 699, 653 S.E.2d 600, 604 (2007); Tynes v. Commonwealth, 49 Va. App. 17, 23 n.3, 635 S.E.2d 688, 690 n.3 (2006).

In this case, we cannot determine error — much less harmful error — without first knowing what Wiley wanted to say when he asked to "say something."  App. at 122.  It is possible that he could have made his situation worse by saying something impertinent in response to the court's ruling.  Cf. In re Pers. Restraint of Benn, 952 P.2d 116, 129 (Wash. 1998) ("The only legitimate purpose for the allocution was for the defendant to express remorse and

ask for mercy."). He may have wanted to say he accepted the court's ruling and had resigned himself to the possibility that only incarceration would allow him to address his long history of substance abuse. Perhaps, too, he sought to move the court's conscience with a plea for mercy with the kind of "halting eloquence" that bespeaks sincerity. Green v. United States, 365 U.S. 301, 304 (1961) (plurality opinion). Experienced trial judges have heard all of these responses and more.

We do not know which version of allocution, if any, Wiley intended to give. Neither Wiley nor his counsel proffered what he wanted to say, either at the revocation hearing or in any post-hearing motion. Thus, we can "only speculate as to the contents of appellant's allocution. Without a proffer, we have no indication whether any statement would tend to be mitigating or aggravating." Montgomery, 56 Va. App. at 704, 696 S.E.2d at 265. "Though sometimes thought of as a mere waiver principle, the proffer requirement serves the higher purpose of safeguarding our duty under Code § 8.01-678 to reverse only when the trial court error actually prejudiced the defense." Ray v. Commonwealth, 55 Va. App. 647, 650, 688 S.E.2d 879, 881 (2010).

"Absent a proffer showing 'harm was done,' we are 'forbidden to consider the question.'" Montgomery, 56 Va. App. at 703, 696 S.E.2d at 264 (quoting Scott v. Commonwealth, 191 Va. 73, 79, 60 S.E.2d 14, 16 (1950)).[4] This principle tracks the proffer requirement generally applicable to arguments on appeal that allege the trial court erroneously

---

[4] We reject Wiley's suggestion that the proffer requirement discussed in Montgomery does not apply to his case because, there unlike here, the trial court invited a proffer. We find the distinction immaterial. The question posed in Montgomery, and the answer we gave to it, was clear: "The Commonwealth contends that appellant's appeal cannot succeed because he did not proffer his allocution statement for the record. We agree." Montgomery, 56 Va. App. at 702, 696 S.E.2d at 264. It was not the absence of an *invited* proffer — but the absence of any proffer at all — that precluded an appellate finding of prejudicial error in Montgomery.

refused to consider testimony or evidence or improperly sustained objections. See id. (citing

Tynes v. Commonwealth, 49 Va. App. 17, 21, 635 S.E.2d 688, 689-90 (2006)).

In short, Wiley's failure to proffer what he would have said precludes appellate review of his claim that the trial court erred by refusing to hear him out. It is as unnecessary as it is impossible for us to resolve on appeal whether the "something" Wiley wanted to say, App. at 122, was something the trial court erroneously refused to hear.[5]

### B. REVOCATION & ABUSE OF DISCRETION

Wiley also challenges the trial court's decision to revoke his suspended sentences and to impose them in full. We find no merit in this assertion.

On appeal, a revocation decision "will not be reversed unless there is a clear showing of abuse of discretion." Price v. Commonwealth, 51 Va. App. 443, 448, 658 S.E.2d 700, 702 (2008) (citation omitted). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." Henderson v. Commonwealth, 59 Va. App. 641, 649, 722 S.E.2d 275, 279 (2012) (*en banc*) (citation omitted), aff'd, 285 Va. 318, 736 S.E.2d 901 (2013). In other words, this deferential standard of review

> necessarily implies that, for some decisions, conscientious jurists could reach different conclusions based on exactly the same facts — yet still remain entirely reasonable. This bell-shaped curve of reasonability governing our appellate review rests on the venerable belief that the judge closest to the contest is the judge best able to discern where the equities lie.

Hamad v. Hamad, 61 Va. App. 593, 607, 739 S.E.2d 232, 239 (2013). When applying this standard, we recognize the trial court "has a range of choice, and its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law." Lawlor v.

---

[5] Given our ruling, we need not address the Commonwealth's related argument that Rule 5A:18 also precludes Wiley's appellate challenge to the trial court's decision.

Commonwealth, 285 Va. 187, 212-13, 738 S.E.2d 847, 861 (2013) (citation and internal punctuation omitted).

Code § 19.2-306 authorizes a circuit court to revoke a suspended sentence "for any cause the court deems sufficient . . . ." A court "undoubtedly has the power to revoke" when the defendant violates the conditions of his suspended sentence. Price, 51 Va. App. at 448, 658 S.E.2d at 702 (citation omitted). "The power of the court to revoke for breach of the terms and conditions of probation should not be restricted beyond the limitations fixed by the statutes." Id. (quoting Rease v. Commonwealth, 227 Va. 289, 294, 316 S.E.2d 148, 151 (1984)).

When coupled with a suspended sentence, probation represents "an act of grace" to the criminal defendant. Id. at 448, 658 S.E.2d at 703. In doing so, the trial court "does not make a contract with the accused, but only extends to him the opportunity which the State affords him to repent and reform." Marshall v. Commonwealth, 202 Va. 217, 219, 116 S.E.2d 270, 273 (1960) (quoting Richardson v. Commonwealth, 131 Va. 802, 810, 109 S.E. 460, 462 (1921)). It is a "free gift" intended to spur the defendant into turning his life around. Richardson, 131 Va. at 810, 109 S.E. at 462. In this case, Wiley received that grace on three occasions:

- first, when the trial court in 2007 suspended nearly all active incarceration after being convicted of felony shoplifting and possession of burglary tools;

- second, when the court in 2008 suspended most of his sentence arising out of a second felony shoplifting incident at the same store, while revoking and resuspending the 2007 sentences; and

- third, when the court in 2010 again revoked and resuspended Wiley's several sentences after finding him in violation of probation.

When Wiley appeared at his third revocation hearing in 2012, it was well within the trial court's discretion to agree with Wiley's probation officer that Wiley's "disregard for supervision" made

- 10 -

him "a risk to public safety." App. at 2. Wiley's failure to keep in contact with his probation officer — the most basic of probation conditions — fully warranted this regrettable conclusion.

## III.

In sum, Wiley's failure to proffer what he now claims to have been a belated attempt at allocution precludes us from determining whether the trial court erred by refusing to hear it. We also hold the trial court did not abuse its discretion by revoking Wiley's suspended sentences.[6]

Affirmed.

---

[6] The record reflects that Wiley's notice of appeal identified Circuit Court No. CR07-482(-04) but not Nos. CR07-483(-04) and CR07-1417(-02).