# United States Court of Appeals
## For the First Circuit

No. 15-1378

UNITED STATES,

Appellee,

v.

EDGAR ACEVEDO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before

Howard, Chief Judge,
Souter, Associate Justice,*
and Lipez, Circuit Judge.

Lenore Glaser, with whom Law Office of Lenore Glaser was on
brief, for appellant.
Randall E. Kromm, Assistant United States Attorney, with whom
Carmen M. Ortiz, United States Attorney, was on brief, for
appellee.

June 2, 2016

---

* Hon. David H. Souter, Associate Justice (Ret.) of the
Supreme Court of the United States, sitting by designation.

**SOUTER**, **Associate Justice**.  Edgar Acevedo appeals the below-Guidelines sentence he received after pleading guilty to conspiracy to commit kidnapping.  We affirm.

**I**

The indictment charged Acevedo with violating 18 U.S.C. § 1201(c) by conspiring with Alfred Vazquez and Alberto Moreno, among others, to kidnap one John Doe and hold him for ransom.  It alleged that the group seized Doe at gunpoint in Boston and that Vazquez, Moreno, and Acevedo later met at Vazquez's house to hide the ransom money.

When Acevedo pleaded guilty, he acknowledged that he had read the indictment and did not object to its description of the offense.  The Government set out what it would have proven if the case had gone to trial, and Acevedo confirmed that he did not dispute anything the Government said.  According to the Government, two men pulled Doe from a car in Boston, one of them, Moreno, armed with a gun.  They dragged Doe into a nearby van, driven by Acevedo, and sped off to Lawrence.  Vazquez subsequently called Doe's wife to demand a ransom.  After Doe had been held for several days at a house in Lawrence, he was rescued by the FBI.  Three witnesses, the Government explained, would have identified Acevedo as a member of the group that kidnapped and held the victim.

Following the guilty plea, the Probation Office prepared a Presentence Report (PSR) based on information developed by the

- 2 -

investigating agents and four cooperating co-conspirators. Among the additions to the story were that Vazquez, who dealt in drugs but also ran an auto shop, was hired by another drug dealer to kidnap Doe (whom the PSR identified as JP) to collect a drug debt. It was Vazquez who recruited Moreno, Acevedo, and others to plan and do the kidnapping. Acevedo was a friend of Moreno's and at the time was living with him while working at Vazquez's auto shop.

To commit the crime, according to the PSR, Acevedo stopped the van behind a car in which JP was riding, which was blocked by another car in front. Moreno and the other conspirator jumped out of the van, pulled JP from the car at gunpoint, and shoved him into the van, which headed for Lawrence and an unoccupied house where Vazquez had once lived. Vazquez told JP that he could pay the drug debt and be released, or fail to pay and he and his family would be killed. In a series of phone calls over the next few days, Vazquez demanded the money from JP's wife. In the PSR account, Acevedo was present at various times in the house where JP was being held.

The PSR reported that JP's family called the FBI, which led the recovery effort. Agents coated marked ransom money with fluorescent powder that is normally invisible but glows in black light. After a ransom drop observed by the FBI, Vazquez and Moreno brought some of the marked bills to Moreno and Acevedo's apartment.

Thence the three went to Vazquez's residence, where agents arrested Vazquez and Acevedo, whose hands glowed under a black light.

The agents rescued JP and collected further evidence. According to the PSR, cellphone analysis revealed that, during the period beginning three weeks before the kidnapping and ending one day after JP's recovery, Vazquez's and Acevedo's phones were in contact 114 times for a total of some three hours. Over the same period, Moreno's and Acevedo's phones were in contact 89 times for a total of about an hour and a half.

The PSR calculated a total offense level of 37 under the U.S. Sentencing Guidelines Manual § 2A4.1(a), starting from a base offense level of 32 for conspiracy to commit kidnapping. To this, the PSR added a six-level enhancement under § 2A4.1(b)(1) for making a ransom demand and a two-level enhancement under § 2A4.1(b)(3) for using a firearm; the PSR then reduced the offense level by three under § 3E1.1 for acceptance of responsibility. The resulting offense level, coupled with a criminal history score of zero, yielded a Guidelines imprisonment range of 210 to 262 months.

Acevedo filed objections to the PSR, some of them going to particular details, such as his involvement in planning the kidnapping. He said that he drove a tow truck for Vazquez's auto shop, so there was nothing unusual about being told to drive into Boston on the day of the kidnapping, and, by his account, he did

not learn that he was there for a kidnapping until he was already in the city. He also disputed that he was present in the house where JP was held, and that he handled the ransom money. He thus urged that he deserved a two-level reduction because of his "minor role" in the conspiracy.

Acevedo objected further to the PSR's offense-level calculation for its inclusion of the ransom-demand enhancement, on the ground that this was impermissible "double counting," a ransom demand being an element of the substantive kidnapping offense. And he also contested the firearm enhancement on the ground that he could not reasonably have foreseen that any of his co-conspirators would possess a gun.

Both Acevedo and the Government submitted sentencing memorandums, Acevedo's reiterating his objections to the PSR. He did not, however, submit any relevant evidentiary support for his assertions[1] or request an evidentiary hearing. The Government, for its part, endorsed the PSR and filed a transcript of grand jury testimony and a police report supporting the claim that cooperating witnesses identified Acevedo at both a planning meeting in advance of the kidnapping and the house where JP was

---

[1] Among the documents attached to his memorandum were private investigatory reports indicating that some of the ransom money may not have made it to Moreno and Acevedo's apartment. Nothing in the reports, however, calls into question the PSR's statement that some of the money was, in fact, brought to the apartment.

held.  The Government requested a 210-month sentence, at the bottom of the Guidelines range.

At sentencing, the district court overruled Acevedo's objections and adopted the Government's and Probation Office's positions.  The court (i) ruled that a ransom demand was not required for a conviction under the statute and thus was an additional fact that could be the basis of an enhancement, (ii) found that Acevedo could reasonably have foreseen that a gun would be used, and (iii) rejected Acevedo's request for a minor-role reduction: even without considering the contested assertions that Acevedo guarded JP and handled the ransom money, the court determined that driving the abduction van was not a "minor role." The PSR's Guidelines range of 210 to 262 months was accordingly adopted.

Nevertheless, the district court found that a Guidelines sentence was longer than necessary to satisfy the sentencing objects under 18 U.S.C. § 3553(a)(2) and imposed a below-Guidelines term of 192 months.  It is from this sentence that Acevedo appeals.

**II**

Acevedo first argues that the district court failed to resolve factual disputes that bore on his sentence, in violation of Federal Rule of Criminal Procedure 32(i)(3)(B) ("[T]he court must--for any disputed portion of the presentence report or other controverted matter--rule on the dispute or determine that a ruling

is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing . . . ."). Acevedo says that this rule required the district court to hold a hearing to resolve the factual disputes he raised. "We review a district court's compliance with Fed. R. Crim. P. 32 de novo," United States v. González-Vélez, 587 F.3d 494, 508 (1st Cir. 2009), and "[w]e review the court's denial of an evidentiary hearing for abuse of discretion," United States v. Jimenez Martinez, 83 F.3d 488, 498 (1st Cir. 1996).

There was no error here. As we have said, "The defendant may object to facts in the PSR, but 'if his objections to the PSR are merely rhetorical and unsupported by countervailing proof, the district court is entitled to rely on the facts in the PSR.'" United States v. Prochner, 417 F.3d 54, 66 (1st Cir. 2005) (alterations omitted) (quoting United States v. Cyr, 337 F.3d 96, 100 (1st Cir. 2003)). We have also explained that "the failure to ask the district court to convene an evidentiary hearing ordinarily spells defeat for a contention that one should have been held." United States v. Cheal, 389 F.3d 35, 45 (1st Cir. 2004) (quoting United States v. Tardiff, 969 F.2d 1283, 1286 (1st Cir. 1992)). Here, Acevedo neither made a relevant evidentiary proffer nor requested a hearing to present it before or during his sentencing. Even so, he was treated more favorably than the Guidelines calculation called for, and even in reaching a Guidelines range

the district court declined to consider certain disputed facts. In any event, as explained below, there is ample support not only in the PSR on the authority of Prochner but elsewhere in the record for the court's sentencing decisions.

## III

Acevedo next contends that the trial court made three errors in calculating his offense level. "We review the district court's interpretation of the guidelines de novo and its fact finding for clear error." United States v. Reyes-Rivera, 812 F.3d 79, 85 (1st Cir. 2016).

### A

Acevedo says that the district court erred in applying the ransom-demand enhancement. His challenge has both a legal and a factual component.

#### 1

According to Acevedo, the ransom-demand enhancement amounted to impermissible double counting because a ransom demand was already baked into his conviction. His conclusion, however, does not follow from his premise. It is true that his conviction for conspiracy to kidnap includes having the object of demanding ransom; this was charged in the indictment and he pleaded guilty without limitation. But the relevant question is whether the ransom demand is an element of the crime of kidnapping per se, or

- 8 -

is a fact subject to being added to the basic offense and is so treated by the Guidelines. It clearly is the latter.

As the trial judge correctly read the pertinent portion of the statute, it is an offense to kidnap not only for ransom but for "reward or otherwise." 18 U.S.C. § 1201(a). Obtaining ransom is thus only one among other possibly illicit objectives of kidnapping numerous enough to justify the catch-all of "otherwise" to cover their conceivable variety. There is consequently no textually based limitation on treating a kidnapping for ransom more severely than some or all other sorts, and this is just what the Guidelines do. Not only that, but the applicable provision, § 2A4.1, sets a base offense level of 32, U.S. Sentencing Guidelines Manual § 2A4.1(a), and that provision (as Acevedo himself concedes) applies to crimes other than kidnapping, many of which do not involve payment of ransom, see id. § 2A4.1 cmt. statutory provisions. Hence, the Guidelines separately provide for a six-level increase "[i]f a ransom demand . . . was made." Id. § 2A4.1(b)(1). The Guidelines thus recognize that "[f]ederal kidnapping cases generally encompass three categories of conduct," only one of which involves "ransom," and accordingly provide "[a]n enhancement . . . when the offense is committed for ransom." Id. § 2A4.1 cmt. background.

Treating the ransom objective as justification for enhancement is therefore not double counting, but merely and

unremarkably cumulative, based on this distinct set of facts, and the law's subtle tolerance for treating one fact as significant for multiple sentencing objectives, see United States v. Fiume, 708 F.3d 59, 61 (1st Cir. 2013), is not even implicated here.

**2**

Next, Acevedo argues that even if the object of demanding ransom is not barred as double counting, there was no evidence that he knew about the ransom demand or that it was reasonably foreseeable to him. See U.S. Sentencing Guidelines Manual § 1B1.3(a)(1)(B)(iii) (conspiracy defendant's offense level can be determined on basis of co-conspirators' acts that were "reasonably foreseeable in connection with th[e] criminal activity").

The district court did not clearly err in rejecting Acevedo's argument. To begin with, the indictment to which Acevedo pleaded expressly charged him with conspiracy to kidnap for ransom, and the ransom demand was mentioned without objection during the plea colloquy. But even setting that to one side, the nature of this kidnapping shows how reasonably foreseeable the ransom demand must have been to Acevedo. To be sure, certain types of kidnapping are inherently unlikely to involve ransoms. This would be true, for example, where a parent absconds across state lines with his child in violation of a custody order. The instant gangland kidnapping, by contrast, has the marks of one done for gain. Seizing an individual in broad daylight on a city street would be

an inept way of gaining control over a victim one intends to kill; a more likely objective would be to profit.

## B

Foreseeability is the crux of Acevedo's further claim that he could not reasonably have foreseen Moreno's use of a gun and should not have received the firearm enhancement. The Guidelines indicate that reasonable foreseeability can turn on "the nature of the offense" alone. See id. § 1B1.3 cmt. n.3(D).

While we need not, and do not, hold that use of a firearm is reasonably foreseeable in every kidnapping, it was in this one. The abduction was carried out by the orchestrated seizure of a victim from a car, where a struggle was obviously to be avoided, and where there was some risk that bystanders might try to interfere. A gun would promise efficiency, not only in the seizure itself, but afterward in controlling JP, since the plot called for him to be driven some distance and held for ransom. This ready foreseeability of a gun as a control mechanism is confirmed by the undisputed record that Moreno wielded the gun almost immediately upon leaving the van that Acevedo was driving. Hence, it was hardly clear error to apply the enhancement.

## C

Acevedo's next assignment of error goes not to applying an enhancement, but to refusing to reduce his offense level under Guidelines § 3B1.2(b) on the ground that he was only "a minor

participant" in the kidnapping, the sort of reduction intended for "a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant in the criminal activity," id. § 3B1.2 cmt. n.3(A). "To qualify for this adjustment, a defendant must show that he is both less culpable than most of his [confederates] in the particular criminal endeavor and less culpable than the mine-run of those who have committed similar crimes." United States v. Meléndez-Rivera, 782 F.3d 26, 28 (1st Cir. 2015).

"[B]attles over a defendant's role in the offense 'will almost always be won or lost in the district court,'" id. at 29 (quoting United States v. Graciani, 61 F.3d 70, 75 (1st Cir. 1995)), and the district court's judgment in this case is defensible. When the district court said there was nothing "minor" about driving the abduction vehicle, that was a fair comment on Acevedo's undisputed actions in driving Moreno and another man to the scene of the seizure and transporting the abductors and victim to the hideaway, all of which made him a central actor in the elements of the crime charged.

## IV

Finally, Acevedo complains of undue disparity between his sentence and the sentences received by his co-conspirators, in violation of 18 U.S.C. § 3553(a)(6) ("The court, in determining the particular sentence to be imposed, shall consider the need to

avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct . . . ."). We review the district court's application of § 3553(a) considerations for abuse of discretion. See, e.g., United States v. Rodríguez-Lozada, 558 F.3d 29, 45 (1st Cir. 2009)

This concern about sentencing disparity "is primarily aimed at national disparities, rather than those between co-defendants." Reyes-Rivera, 812 F.3d at 90 (internal quotation marks omitted) (quoting United States v. Marceau, 554 F.3d 24, 33 (1st Cir. 2009)). Thus, while avoidance of disparities among co-defendants may be considered, it would be too glib to argue that a defendant is "entitled to a lighter sentence merely because his co-defendants received lighter sentences" "[u]nless two identically situated defendants receive different sentences from the same judge, which may be a reason for concern." Id. (internal quotation marks omitted) (quoting United States v. Rivera-Gonzalez, 626 F.3d 639, 648 (1st Cir. 2010)). In most cases, "the myriad factors that come into play at sentencing make it difficult to isolate identically situated co-defendants. We have noted, for example, the permissible distinction . . . between those who cooperate and those who do not . . . ." United States v. Reyes-Santiago, 804 F.3d 453, 467 (1st Cir. 2015) (citations and internal quotation marks omitted).

This distinction is apropos here, and fatal to Acevedo's claim. He fails even to try to show that he and his co-defendants were identically situated, and he simply ignores the fact that he did not cooperate, while many of his co-defendants did.

**V**

The district court's judgment is AFFIRMED.[2]

---

[2] Our affirmance of the district court's judgment forecloses Acevedo's argument that his case should be remanded to a different judge.