# United States Court of Appeals
## For the First Circuit

Nos. 16-1251; 16-1252

UNITED STATES OF AMERICA,

Appellee,

v.

AKYLLE MURCHISON,

Defendant, Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. George Z. Singal, U.S. District Judge]

Before

Thompson, Stahl, and Barron,
Circuit Judges.

Peter J. Cyr and Law Offices of Peter J. Cyr on brief for appellant.

Thomas E. Delahanty II, United States Attorney, and Margaret D. McGaughey, Assistant United States Attorney, on brief for appellee.

July 26, 2017

**THOMPSON**, <u>Circuit Judge</u>.

**Background**

Back in 2014, Akylle Murchison was picked up and charged in connection with a lengthy investigation into a cocaine-producing and -selling conspiratorial enterprise. Murchison pled guilty to a one-count indictment for violating 21 U.S.C. §§ 841(a)(1) and 846 (he conspired with others to distribute, and possessed with intent to distribute, twenty-eight grams or more of mixtures containing cocaine and cocaine base) and to a one-count information under 21 U.S.C. § 841(a)(1) (he possessed with intent to distribute a substance containing bk-MDEA, or ethylone, usually called a "bath salt").

At sentencing and in his sentencing memorandum, Murchison objected to the Pre-Sentence Investigation Report's (PSR) inclusion of paragraphs 10 and 83, which reference information (false information, says Murchison) given by a cooperating source who claims Murchison also was involved in purchasing firearms.[1] Murchison asked the court to strike those

---

[1] Paragraph 10 states:

Notably, SOI-4 [(Source of Information)] also alleged that Akylle Murchison arranged for third parties (usually females) to buy firearms on his behalf at local stores in Lewiston. According to SOI-4, the serial numbers would be scratched off those weapons, and Akylle Murchison then arranged for the guns to be delivered to a "gang" in Boston, known as the Norwood Bulls. It's noted that SOI-4 did not allege these firearms were connected to Akylle Murchison's drug activity. Instead,

paragraphs, or at least to initial the paragraphs and indicate that there were insufficient facts to support the information. In ruling, the district-court judge explained, "All right, I'm going to leave [the paragraphs] in the report. I'm going to indicate for the record that it won't make any difference with regard to whatever sentence I give, but I think it's proper to be in the report." After another effort by Murchison, in which he argued that the information contained in paragraphs 10 and 83 would negatively impact the Bureau of Prison's (BOP) classification determination and the availability of a 500-hour drug treatment program, the judge reiterated: "I'm not going to strike it. I think I was more than lenient in not using it as part of my sentencing determination. It's an accurate statement, and to the extent the Bureau of Prisons considers it so be it, though I'm advised by probation it probably won't happen, though that doesn't

according to SOI-4, Akylle Murchison told SOI-4 "I have to supply the hood with guns, you know how I do."

And paragraph 83 states:

To the contrary, there also appears to be a basis for a non-guideline sentence above the guideline range. Namely, there is evidence that the defendant utilized straw purchasers for firearms, which were later sold to members of a gang in Boston, MA, known as the Norwood Bulls. Because this conduct appears to be unrelated to the instant offense, it can't be accounted for in the guideline calculations.

- 3 -

enter into my judgment on that."[2]  In due course, Murchison was sentenced to concurrent prison terms of 108 months.

On appeal, Murchison presents us with two complaints: (1) the court erred when it refused to strike paragraphs 10 and 83 from the PSR, and therefore the matter should be remanded so the PSR can be amended,[3] and (2) the sentence imposed is unreasonable. We take each in turn.

**Rule 32 and the Bureau of Prisons**

Murchison claims the court's refusal to strike these paragraphs was a violation of Fed. R. Crim. P. 32(i)(3)(B).  He also says the paragraphs' inclusion is prejudicial to the way in

---

[2] The court determined that the PSR statement accurately reflected what the cooperating source reported, sidestepping the issue of the truthfulness of the accusation.

[3] In passing, Murchison observes that, "[w]ithout a hearing and the introduction of evidence" regarding the contents of the challenged paragraphs, the district court "should have deleted" those paragraphs.  To the extent that Murchison intended to argue that he wants us to remand for an evidentiary hearing, we decline to address that angle -- Murchison has not developed this argument on appeal.  United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").  But at any rate, while it is true that "[w]hen a defendant objects to factual statements contained in such a report, 'the sentencing court may not rely on those facts unless the government proves them by a preponderance of the evidence,'" United States v. Hopkins, 824 F.3d 726, 734-35 (8th Cir.), cert. denied, 137 S. Ct. 522 (2016) (quoting United States v. Bowers, 743 F.3d 1182, 1184 (8th Cir. 2014)), that is not a problem here. As will be discussed, the district court did not rely on the contested information in sentencing, so any hearing-related argument has no pull.

which the BOP will classify and house him, and will negatively affect the availability of rehabilitation programs.  We review a district court's compliance with Rule 32 de novo.  United States v. Acevedo, 824 F.3d 179, 184 (1st Cir. 2016) (quoting United States v. González-Vélez, 587 F.3d 494, 508 (1st Cir. 2009)).

Before we get into these issues, we provide the following primer to explain generally how the pieces of this Rule 32-and-the-BOP puzzle come together.

Rule 32(i)(3)(B) -- the subsection specifically raised by Murchison -- instructs that a court "must -- for any disputed portion of the presentence report or other controverted matter -- rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing."  Fed. R. Crim. P. 32(i)(3)(B).  And Rule 32(i)(3)(C) suggests a clear connection between the PSR and the BOP:  it requires a court to "append a copy of the court's determinations under this rule to any copy of the presentence report made available to the Bureau of Prisons."  Fed. R. Crim. P. 32(i)(3)(C).  So Rule 32(i)(3)(C) tells us that the PSR, accompanied by other Rule 32 "determinations," gets sent to the BOP.

For its part, the BOP's Inmate Security and Custody Classification Manual (the BOP Manual) explains that, prior to classification, the Designation and Sentence Computation Center

- 5 -

(DSCC) must receive all sentencing material, including the PSR, judgment, statement of reasons (SOR),[4] and an "Individual Custody and Detention Report"[5] from the sentencing court, U.S. Probation Office (USPO), and the U.S. Marshals Service (USMS).[6] Custody & Care: Designations, Fed. Bureau of Prisons, https://www.bop.gov/inmates/custody_and_care/designations.jsp (last visited July 17, 2017); see also Fed. Bureau of Prisons, Program Statement: Inmate Security Designation and Custody Classification No. P5100.08, Ch. 3, at 1 (2006), https://www.bop.gov/policy/progstat/5100_008.pdf [hereinafter BOP Manual].

---

[4] The statement of reasons is a form completed after sentencing -- it reports the court's findings and comments as to the PSR, mandatory minimum sentence, guideline range for sentencing, the sentencing determination, any departures or variances from the guidelines, and the determinations of restitution.

[5] The Individual Custody and Detention Report is a USMS form that reports information such as any aliases and gang affiliations.

[6] The breakdown of events, roles, and responsibilities, according to the BOP Manual, is: (1) "[t]he inmate is sentenced"; (2) "[t]he Clerk of the Court transmits the Judgment and Commitment Order (old law cases) or Judgment in a Criminal Case (new law cases) to the USMS;" (3) "[t]he USMS makes a request to the DSCC advising that the inmate is now ready for designation to a facility;" (4) "[i]f it has not already been provided, DSCC staff must contact the necessary officials (USPO or USMS) for the following: two copies of the PSR, a copy of the Judgment, to include the SOR, and the Individual Custody and Detention Report." BOP Manual, Ch.3, at 1.

So, together, Rule 32 and the BOP's system work to ensure that the BOP classifies and processes sentenced offenders with the benefit of all relevant and informative sentencing material.

Back to Murchison's Rule 32 argument. To be sure, Murchison's concerns are not frivolous -- they are valid and important contentions based on the interplay of Rule 32 and the information that gets sent to the BOP, which in turn is used by the BOP to make fundamental decisions about classification, housing, and eligibility for rehabilitation and employment programs, all of which will, of course, impact Murchison's day-to-day life as an inmate. So getting it right is important. But on these facts, we do not see the Rule 32(i)(3)(B) violation Murchison complains of. Simply put, the judge complied with Rule 32(i)(3)(B) when he "rule[d] on the dispute" ("I'm going to leave [the paragraphs] in the report" and "I'm not going to strike it"), and, after that, he was required to do nothing more. United States v. Melendez, 279 F.3d 16, 19 (1st Cir. 2002) (quoting United States v. Turner, 898 F.2d 705, 710 (9th Cir. 1990)). Nevertheless, the judge also made it plain that he would not rely on the contested information in sentencing, and the record bears out that he stuck to that plan. On this record, we fail to understand how this is anything other than a measured ruling that constitutes compliance with Rule 32(i)(3)(B).

Murchison's BOP angle also fails.  That the BOP may see in the PSR certain information Murchison believes is prejudicial does not compel the district court to strike it from the PSR.  See, e.g., Hopkins, 824 F.3d at 735 (rejecting argument that court was required to strike contested information in the PSR because the BOP would rely on it); United States v. Beatty, 9 F.3d 686, 689 (8th Cir. 1993) ("[Rule 32] does not require that the objected-to material be stricken.").  And remember:  The BOP does not receive only the PSR for its classification determination, but rather it receives "all sentencing material," including the PSR, judgment, and SOR.  BOP Custody & Care:  Designations; see also Fed. R. Crim. P. 32(i)(3)(C); BOP Manual, Ch. 3, at 1.  This is important because, in Murchison's case, the SOR indicated for the BOP's consideration that "[t]he Court will not consider the reference to firearms in paragraphs 10 and 83 when imposing sentence."[7]  Taken together, that means the BOP was equipped with the full complement

---

[7] This comment from the district court falls under "Additional Comments or Findings" on the SOR.  That section's instructions echo Rule 32, asking the court to "include comments or factual findings concerning any information in the [PSR], including information that the [BOP] may rely on when it makes inmate classification, designation, or programming decisions; any other rulings on disputed portions of the [PSR]; identification of those portions of the report in dispute but for which a court determination is unnecessary because the matter will not affect sentencing or the court will not consider it."  (Emphasis added.)  That the SOR says the BOP "may rely on" certain information contained in the SOR tells us, of course, that the SOR is intended to be reviewed by the BOP.

of sentencing information, so it was aware that, although there is information about firearms in the PSR, the district court did not consider that information in sentencing. This undercuts Murchison's argument about the prejudicial impact of the firearms information, which "will follow [him] to the [BOP]," since more than just the PSR follows Murchison to the BOP.

We note too that, in the judgment, the district-court judge recommended to the BOP that Murchison be allowed to participate in the 500 Hour Comprehensive Drug Treatment Program, which Murchison specifically wanted. If the BOP does otherwise, as the district-court judge noted, "so be it," for classification determinations are the BOP's call, not ours.[8]

**Reasonableness of the Sentence**

Next up: Murchison's similarly unavailing argument that the sentence is "greater than necessary and unreasonable given the totality of the circumstances." It is unclear whether Murchison challenges the sentence on procedural or substantive grounds (he takes issue with both the court's assessment of the 18 U.S.C. § 3553(a) factors and the weight given to them), but since either

---

[8] Determinations as to classification of prisoners and eligibility to participate in certain programs are left to the BOP, not the courts. See Melendez, 279 F.3d at 18 (quoting Thye v. United States, 109 F.3d 127, 130 (2d Cir. 1997) ("Decisions to place a convicted defendant within a particular treatment program or a particular facility are decisions within the sole discretion of the Bureau of Prisons.")); see also Hopkins, 824 F.3d at 735.

- 9 -

route leads to a dead end -- even using the more defendant-friendly abuse of discretion standard for each[9] -- we quickly dispose of each.[10]

Murchison's sentence challenge rehashes what he argued at the hearing:  he highlights mitigating factors that, in his view, justify a lesser sentence (his young age, no prior convictions, past abuse, loss of his mother at a young age, mental health issues, and more), and he also argues that he "is a good prospect for rehabilitation."

The district-court judge calculated the applicable Guideline range of imprisonment of 151 to 188 months (neither party

---

[9] Reviewing a challenged sentence requires a two-step process. United States v. King, 741 F.3d 305, 307 (1st Cir. 2014) (citing Gall v. United States, 552 U.S. 38, 51 (2007)).  First, we resolve claims of procedural error before inquiring into whether the sentence is substantively reasonable.  Id. at 308.  We review the procedural reasonableness of the sentence for abuse of discretion. United States v. Flores-Machicote, 706 F.3d 16, 20 (1st Cir. 2013). For a preserved challenge to the substantive reasonableness of a sentence, "we proceed under the abuse of discretion rubric, taking account of the totality of the circumstances."  United States v. Ruiz-Huertas, 792 F.3d 223, 226 (1st Cir. 2015).  Where, as here, a defendant does not preserve an objection to the substantive reasonableness of their sentence, "[t]he applicable standard of review is somewhat blurred" as to whether the ordinary abuse of discretion standard or the plain error standard applies.  Id. at 228.  But Murchison's challenge fails even under the abuse of discretion standard.

[10] This sentencing appeal follows a guilty plea, and we therefore look to "the unchallenged portions of the presentence investigation report (PSI Report), and the record of the disposition hearing" for the relevant facts.  United States v. Vargas, 560 F.3d 45, 47 (1st Cir. 2009).

objected to that calculation), and stated that he had considered all of the § 3553(a) factors, which "is entitled to significant weight." United States v. Santiago-Rivera, 744 F.3d 229, 233 (1st Cir. 2014) (citing United States v. Dávila–González, 595 F.3d 42, 49 (1st Cir. 2010)). The judge acknowledged the defense's mitigation arguments, and thanked those who spoke on Murchison's behalf for providing insight into Murchison's character and story before ordering the sentence of 108 months, a forty-three-month downward variance. The judge told Murchison the sentence was imposed in an effort to impress upon Murchison "not only the seriousness of his actions but also indicate to him that the Court has taken into account some of the ameliorating factors present in this case."

So this comes down to yet another case where the true complaint seems to be that "the court did not assign the weight to certain factors that the [appellant] thought appropriate," which is meritless. Ruiz-Huertas, 792 F.3d at 227; see also United States v. Clogston, 662 F.3d 588, 593 (1st Cir. 2011) (explaining that "the weighting of [sentencing] factors is largely within the court's informed discretion"). The judge correctly looked at everything presented, considered all appropriate sentencing factors, and, frankly, seemed particularly mindful of the "ameliorating factors" in play. In the end and in his substantial

- 11 -

discretion, the judge pronounced a procedurally reasonable sentence.

Mindful that "[t]here is rarely, if ever, a single correct sentence in any specific case," Santiago-Rivera, 744 F.3d at 234, we turn to the substantive reasonableness of the sentence, concluding that it easily passes muster. The district-court judge's "ultimate responsibility [wa]s to articulate a plausible rationale and arrive at a sensible result," United States v. Carrasco-De-Jesús, 589 F.3d 22, 30 (1st Cir. 2009), and he did so by plausibly reasoning that Murchison's extensive involvement as a leader and organizer in this conspiracy, the duration and regularity of his involvement, the seriousness of the crime, and the quantity of drugs involved warranted the sentence imposed. "[T]he district court sufficiently weighed the history and characteristics of both the offense and the offender," and the judge's plausible rationale and careful consideration of the relevant factors places this sentence squarely "within the universe of acceptable outcomes." United States v. Anonymous Defendant, 629 F.3d 68, 78 (1st Cir. 2010).

**Affirmed.**