# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-2065

_____

United States of America

*Plaintiff - Appellee*

v.

Francisco Hernandez-Espinoza, also known as Alejandro Garcia, Jr.

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Ft. Dodge

_____

Submitted: April 13, 2018
Filed: May 21, 2018

_____

Before COLLOTON, ARNOLD, and SHEPHERD, Circuit Judges.

_____

ARNOLD, Circuit Judge.

Francisco Hernandez-Espinoza is a Mexican citizen who entered the United States without authorization. Unable to obtain employment or identification, he purloined a social security number belonging to someone else and falsely represented it to be his. After the government uncovered his ruse and charged him with a host of crimes, he pleaded guilty to misusing a social security number, *see* 42 U.S.C.

§ 408(a)(7)(B), and to aggravated identity theft, *see* 18 U.S.C. § 1028A(a)(1). The district court[1] sentenced him to a year in prison for misusing a social security number, which was six months above the top of his Guidelines range, and to the statutorily mandated two additional years in prison for aggravated identity theft. *See id*. The district court also sentenced him to three years of supervised release and imposed a $5,000 fine.

Hernandez-Espinoza raises numerous issues concerning his sentence. In pretrial proceedings below, he objected to the probation officer's proposed scoring of one criminal-history point for committing third-degree criminal sexual conduct under Minn. Stat. § 609.344(1)(b). He argued that he did not plead guilty or receive a "deferred judgment" for that charge but instead received a "deferred prosecution," and, under the Sentencing Guidelines, defendants do not receive points when charges result in a deferred prosecution. *See* USSG § 4A1.2(f). After reviewing the objection, the probation officer agreed that no criminal-history point should be assessed. At sentencing, the district court acknowledged that Hernandez-Espinoza would not receive a point for the offense.

Hernandez-Espinoza now maintains nonetheless that the district court clearly erred in believing he had received a deferred judgment—a mistaken belief, he contends, that contributed to the district court varying six months above his Guidelines range. We agree it would be error for a sentencing court to select a sentence based on clearly erroneous facts. *See United States v. Meadows*, 866 F.3d 913, 917 (8th Cir. 2017). But the district court stated that it was "the criminal sexual conduct" leading to the charge, rather than any supposed guilty plea or deferred judgment, that was "concerning." Hernandez-Espinoza did not object to most of the presentence report's recitation of the conduct underlying that charge, so it was not

---

[1]The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa.

error for the district court to consider that conduct. *See* Fed. R. Crim. P. 32(i)(3)(A). Though it would have been error for the district court to rely on objected-to assertions of fact that the government did not later prove, *see United States v. Webster*, 788 F.3d 891, 892 (8th Cir. 2015), the district court expressly noted it was not considering any such assertions. The unobjected-to conduct showed that Hernandez-Espinoza, then nineteen, had sex with a fifteen-year-old girl ten to fifteen times. So the district court did not err in considering that conduct in determining whether to vary upward.

Hernandez-Espinoza also maintains the district court wrongfully denied his request to move the paragraph detailing the sexual-conduct charge from the "Adult Criminal Conviction(s)" section of the PSR to the "Other Arrests" section. He argues that without the move "the Bureau of Prisons could, and likely will, consider this 'conviction' in determining [his] security classification," and that leaving the paragraph under the "Adult Criminal Conviction(s)" heading makes it appear that the district court overruled his objection to the scoring of a criminal-history point.

District courts are arbiters of justice, not editors of PSRs. *See United States v. Beatty*, 9 F.3d 686, 689 (8th Cir. 1993). For this reason, we have affirmed a district court's refusal to strike objected-to and unproven portions of a PSR identifying a defendant as a gang member even though the BOP might use that information to determine his security classification or placement in the prison system. *See United States v. Hopkins*, 824 F.3d 726, 735 (8th Cir. 2016). We think the principle of *Hopkins* applies here, even though Hernandez-Espinoza asked the district court to cut and paste instead of delete. We also doubt the BOP would conclude that the district court overruled his objection: The final PSR contains the probation officer's acknowledgment that "it appears as though there was no guilty plea entered on the defendant's behalf," so "no criminal history points should have been assessed." It is important to note, moreover, that a PSR is not the only information the BOP considers when classifying prisoners; it reviews a number of documents, including the PSR, the judgment, and the district court's statement of reasons for choosing the sentence

imposed. *United States v. Murchison*, 865 F.3d 23, 26–28 (1st Cir. 2017). The statement of reasons here suggests the district court did not overrule the objection—it notes only a history of serious charges, not convictions. We think it speculative that the BOP would cursorily and mistakenly determine Hernandez-Espinoza's classification despite "the full complement of sentencing information" that it should receive. *See id.* at 27–28. And even if it did, Hernandez-Espinoza could pursue administrative remedies within the BOP. *See United States v. Beauchamp*, No. 98–1510, 1999 WL 132188, at *1 (8th Cir. Mar. 12, 1999) (per curiam).

Hernandez-Espinoza also takes issue with the $5,000 fine the district court imposed. He first argues the district court imposed the fine "upon threat of obstruction of justice and denial of acceptance of responsibility." We do not see it that way. The district court merely warned him of the consequences of pursuing frivolous objections. Our court recently rejected a nearly identical argument. *See United States v. Trevino*, 829 F.3d 668, 674–75 (8th Cir. 2016).

Hernandez-Espinoza next maintains that the district court failed to make the requisite factual finding that he could pay a fine. *See United States v. Kay*, 717 F.3d 659, 665 (8th Cir. 2013). But our review of the record reveals that the district court explicitly found that Hernandez-Espinoza had the ability to pay a fine. It did so, moreover, on a sufficient record because, after the district court and defense counsel had a long back-and-forth to determine whether Hernandez-Espinoza contested that he could pay the fine, defense counsel admitted Hernandez-Espinoza could do so.

Hernandez-Espinoza asserts as well that the district court improperly relied on his pretrial services report to determine his sentence. An initial iteration of the PSR noted that Hernandez-Espinoza had reported having no net worth and no monthly cash flow, and though his fiancée owned substantial assets, it did not appear Hernandez-Espinoza could pay a fine. The government objected to this finding, pointing out that Hernandez-Espinoza's pretrial services report showed that when he

sought bail, he listed numerous assets belonging to him. The district court asked Hernandez-Espinoza at sentencing about this inconsistency, and as we have already said, he eventually conceded he could pay a fine.

Federal law generally makes pretrial services reports confidential. 18 U.S.C. § 3153(c)(1). But like any good general rule, there are exceptions to this one, at least two of which we find applicable here. First, probation officers may use these reports to compile PSRs, 18 U.S.C. § 3153(c)(2)(C), and those officers do not create PSRs for their own benefit; they create them so district courts can have information on which to make sentencing decisions. *See United States v. Morrison*, 778 F.3d 396, 400 (2d Cir. 2015) (per curiam). It would be beyond odd if those assisting the district court could have access to these reports while the district court itself could not. As the *Morrison* court explained, implicit in the relevant statute "is the expectation that district judges will receive and use that information in determining a defendant's sentence." *Id.* Second, though § 3153(c)(3) makes pretrial services reports inadmissible "on the issue of guilt in a criminal judicial proceeding," we have held that they can be used to impeach a criminal defendant at trial. *See, e.g.*, *United States v. Wilson*, 930 F.2d 616, 619 (8th Cir. 1991). It seems to follow that, if the government can use these reports to impeach a defendant during a criminal trial, then a fortiori a district court can consider them to impeach a defendant for purposes of fixing a sentence.

Finally, Hernandez-Espinoza maintains we should reverse his sentence because the district court imposed a fine and accepted a check for that fine before Hernandez-Espinoza's allocution. During sentencing, the district court pursued the immediate payment of the fine apparently in an attempt to thwart collection problems that it saw brewing. The district court asked defense counsel if Hernandez-Espinoza's fiancée, who was sitting in the gallery and whose name was on the account from which Hernandez-Espinoza had agreed to pay the fine, would be willing to write the check

immediately. She told counsel she was and she did so. All of this happened before Hernandez-Espinoza had allocuted.

Federal Rule of Criminal Procedure 32(i)(4)(A)(ii) requires the court to give the defendant a chance to speak before it imposes sentence. We have said that the failure to give the defendant the right of allocution is clear error that requires a reversal. *See, e.g.*, *United States v. Murillo-Mora*, 703 F. App'x 435, 438 (8th Cir. 2017) (per curiam). This strict rule applies in cases where a defendant never gets a chance to allocute at all; but here the court invited Hernandez-Espinoza to allocute and he did, albeit after the court imposed the fine and accepted a check to pay it from his fiancée. Courts are not nearly as strict when a defendant allocutes at some point during sentencing if that allocution retains the potential to affect the sentence. For example, we have held that a district court does not err when it announces an intended sentence before allocution and then imposes that sentence after allocution. *See United States v. Hentges*, 817 F.3d 1067, 1070 (8th Cir. 2016). Indeed, "it seems reasonable to assume that any statement which [Hernandez-Espinoza] might have made (in mitigation of his punishment) the moment before sentencing would have been equally as effective the moment after pronouncement of sentence." *Gordon v. United States*, 438 F.2d 858, 882 (5th Cir. 1971). The main point is that Hernandez-Espinoza's allocution could still have swayed the district court to change the sentence. The court could have ordered no fine, or ordered the deputy clerk to return the check, to tear it to pieces, to see that a new check was provided in a lower amount, or to issue some kind of refund. In short, the fine was no less reversible or inevitable than were the sentences in *Hentges* or *Gordon*. We note, in fact, that after Hernandez-Espinoza allocuted, the district court discussed its imposition of the fine but did not change its mind, so it seems apparent that the district court did not consider the matter of the fine as already set in stone.

Affirmed.

_____