# United States Court of Appeals
## For the First Circuit

No. 19-1936

UNITED STATES OF AMERICA,

Appellee,

v.

DENNIS AYALA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. George Z. Singal, U.S. District Judge]

Before

Kayatta, Selya, and Barron,
Circuit Judges.

Jane Elizabeth Lee for appellant Dennis Ayala.
Noah Falk, Assistant United States Attorney, with whom Halsey
B. Frank, United States Attorney, was on brief, for appellee.

March 19, 2021

BARRON, **Circuit Judge**.  Dennis Ayala challenges his 2019 sentence in the District of Maine for a federal drug conspiracy offense.  We affirm.

**I.**

On February 25, 2019, pursuant to a plea agreement, Ayala pleaded guilty in the District of Maine to one count of conspiracy to distribute, and to possess with intent to distribute, 40 grams or more of fentanyl, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B).  Under the plea agreement, Ayala and the government had agreed that, for purposes of calculating the Guidelines Sentencing Range ("GSR") for this offense, they would both recommend a Base Offense Level ("BOL") under the Guidelines of 28, pursuant to U.S.S.G. § 2D1.1(a)(5) and (c)(6).  That BOL corresponds to the one that applies when the quantity of fentanyl attributable to a defendant convicted of an offense such as the one to which Ayala pleaded guilty is 280 to 400 grams.  See id. § 2D1.1(a)(5), (c)(6).

The first day of Ayala's sentencing proceeding was July 16, 2019.  The District Court indicated at that time that it did not intend to rely on the BOL in the plea agreement.  Instead, the District Court explained that it intended to rely on the BOL in the Presentence Investigation Report ("PSR"), which the United States Probation Office had prepared in advance of the sentencing proceeding.

The PSR had attributed a quantity of nearly 900 grams of fentanyl to Ayala in connection with his offense.[1]  Pursuant to U.S.S.G. § 2D1.1(a)(5) and (c)(5), the PSR had thus calculated Ayala's BOL to be 30 rather than 28 as the plea agreement had specified.  The PSR had then added a three-level leadership enhancement based on U.S.S.G. § 3B1.1(b) and subtracted three levels pursuant to U.S.S.G. § 3E1.1(a) and (b) for Ayala's acceptance of responsibility.  The result was that the PSR had calculated Ayala's Total Offense Level ("TOL") to be 30.  The PSR had then calculated the GSR, based on that TOL and Ayala's criminal history, to be 108 to 135 months of imprisonment.

Both Ayala and the government objected to the District Court's decision to adopt the BOL set forth in the PSR.  When asked by the District Court to explain the objection, the government said that both sides had agreed in the plea agreement to make a nonbinding recommendation to the District Court that the BOL be 28.  Ayala also argued that the drug quantity that the PSR had used in calculating the BOL was too large.

The PSR had based the drug quantity on which it relied in calculating Ayala's BOL on certain cash that Ayala had

---

[1]  The PSR had based its more detailed calculation of the drug quantity on converted heroin drug weights and their marijuana equivalents of just over 1,100 kilograms.  But, the PSR had also noted that if only fentanyl had been used to make the calculation, then the total drug quantity would have been 897.07 grams, which is an amount that would also have corresponded to a BOL of 30.

possessed. The PSR had found that the cash had been used in connection with the conspiracy to which Ayala had pleaded guilty. Ayala contended, however, that the cash at issue was not in fact "drug money" and so should not have been used to determine that the drug quantity involved in his crime was large enough to yield a BOL of 30.

Ayala pointed to documents that he had previously submitted to the District Court. Those documents, he argued, showed that he had used some of the cash in question to repay a person who had paid his bail for his arrest on a state drug charge. Ayala also contended that he had received the cash in 2013 from legitimate sources.

The District Court granted Ayala a continuance to support this latter contention with additional documentation. By the time the sentencing proceeding recommenced on September 16, 2019, Ayala had produced documents that showed, among other things, that he had received benefits and life insurance payments of approximately $250,000 in 2013, following his daughter's death.

The District Court nonetheless adopted the PSR's calculation of Ayala's GSR, which was based on a BOL of 30 rather than 28. That BOL was in turn based on the drug quantity of nearly 900 grams of fentanyl that the District Court had attributed to Ayala in connection with his offense. The District Court then sentenced Ayala to 108 months in prison. The length of that prison

sentence was at the very bottom of the GSR of 108 to 135 months that the District Court used. It was also at the very bottom of the GSR that the PSR had used. If the District Court had calculated the GSR based on the plea agreement's BOL of 28, then -- holding all other aspects of the calculation constant -- the GSR would have been 87 to 108 months. See U.S.S.G. § 2D1.1(a)(5), (c)(6). In that event, the sentence that the District Court imposed would have been at the very top end of the applicable GSR.

Ayala timely appealed.

## II.

Ayala first takes aim at the procedural reasonableness of his sentence due to the drug quantity that the District Court attributed to him in connection with his offense. The District Court relied on that drug quantity in calculating the GSR to be 108 to 135 months of imprisonment. Ayala contends that the evidence did not suffice to support that drug quantity, because the District Court based it in part on his having been in possession of cash that was "drug money" when the record failed to show that it was. Ayala also contends that, in any event, the District Court erred by simply relying on the PSR's use of that larger drug quantity to calculate his GSR without making independent findings of its own. Ayala contends that this was so because he had expressly objected to the PSR's use of that larger drug quantity in calculating his BOL on the ground that, in doing

- 5 -

so, it was wrongly treating the cash that he had possessed as "drug money."

We review for clear error a contention that the record does not support a district court's factfinding regarding drug quantity. See United States v. Bernier, 660 F.3d 543, 545 (1st Cir. 2011). We review de novo a contention that a district court erred in failing to make independent findings of its own and by instead simply adopting the PSR's findings in the face of a defendant's express objection to them. See United States v. Murchison, 865 F.3d 23, 26 (1st Cir. 2017). But, here, we may bypass the substance of each of these contentions, because, as we will explain, any error that the District Court may have made with respect to drug quantity in calculating the GSR in Ayala's case was harmless. See United States v. Tavares, 705 F.3d 4, 24-28 (1st Cir. 2013).

In announcing Ayala's sentence, the District Court noted that Ayala was a long-term drug dealer and that he continued to traffic drugs after his arrests, even while out on bail. It then explained:

> [I]n my findings [Ayala] has . . . a [TOL of] 30 and a Criminal History Category II which is 108 to 135 months. If he had [a TOL of] 28 . . . , as [Ayala's counsel] was arguing, and a II, he would have 87 to 108 months.
>     In my view, the 108 months is appropriate under either set of circumstances, and that's what I'm going to sentence him to. (emphasis added).

- 6 -

The District Court's statement that the sentence that it imposed was "appropriate under either set of circumstances" clearly demonstrates, when read in the context of "the record as a whole," Williams v. United States, 503 U.S. 193, 203 (1992), that the sentence did not depend on whether the BOL was 28 or 30. That conclusion accords with the fact that the sentence that the District Court imposed falls within the GSR that corresponds to either of those BOLs. And, because the statement by the District Court makes clear that the sentence that it imposed did not depend on its choice between those two BOLs, its statement also necessarily demonstrates that the sentence that it imposed did not depend on whether the proper drug quantity was the lesser one that Ayala contends the District Court should have used or the larger one that it did use. Accordingly, the record reveals that any error that the District Court may have made with respect to drug quantity was harmless, because any such error had no effect on the sentence imposed. See Tavares, 705 F.3d at 24-28; see also United States v. Marchena-Silvestre, 802 F.3d 196, 201-02 (1st Cir. 2015) (explaining that "not . . . every error in calculating the [GSR] calls for reversal under plain error analysis, or even under harmless error analysis" because "[a] sentencing court might, for example, make it clear that it was aware of a possible flaw in its calculation of a [GSR], and explain that its sentence would nevertheless be the same under an alternative analysis pressed by

the party that ultimately appealed," but finding plain error because "[n]othing in th[e] record provide[d] any indication clear enough to overbear the probative force of th[e] logical presumption" that "there [wa]s at least a reasonable likelihood that [the sentencing court] would have landed on a [shorter] sentence").[2]

In contending otherwise, Ayala points first to Molina-Martinez v. United States, 136 S. Ct. 1338 (2016), in which the United States Supreme Court explained that Guidelines calculation errors can be prejudicial even when they are not preserved and even when the imposed sentence would have fallen within the correct GSR. See 136 S. Ct. at 1345. But, the Supreme Court also noted in that case that there might be "instances when, despite application of an erroneous Guidelines range, . . . [t]he record in a case may show . . . that the district court thought the sentence it chose was appropriate irrespective of the Guidelines

_____

[2] Ayala contends at one point in his briefing to us that the District Court "substantively erred" in using the higher BOL from the PSR, but he does not dispute that such a challenge, even if styled as one that takes aim at a "substantive" rather than a "procedural" error, fails insofar as the resultant BOL of 30 played no role in the District Court's decision to impose the sentence that he challenges. Nor is there merit to Ayala's challenge to his sentence insofar as he means to take issue with the length of the sentence independent of his challenge to the District Court's reliance on the drug quantity set forth in the PSR and thus to the BOL of 30. As we have noted, under either the higher BOL of 30 or the lower one of 28, the sentence was within the applicable GSR, and we see no basis for concluding on this record that, as such, the sentence that was imposed was substantively unreasonable.

range" and that in such cases the defendant would not be able to show that the calculation error was prejudicial.  Id. at 1346. For the reasons that we have just given, the District Court here made clear that it "thought the sentence it chose was appropriate irrespective" of the dispute over the proper GSR, id., and so Molina-Martinez provides no support for Ayala's position.

Ayala also relies on United States v. Alphas, 785 F.3d 775 (1st Cir. 2015), in which the district court stated that it was "unlikely" that a different Guidelines calculation would have resulted in a different sentence, id. at 780.  We concluded that this statement in context left open "the possibility of a lesser sentence," such that the error in the Guidelines calculation was not harmless.  Id.  But, Ayala's reliance on this precedent, too, is misplaced, because, as we have explained, the District Court's explanation for the sentence that it imposed does not admit of such a possibility.

### III.

Ayala's remaining ground for challenging his sentence is that the sentencing judge exhibited bias toward him at his sentencing proceeding.  Because Ayala did not preserve this challenge below, we review it only for plain error, see United States v. Caramadre, 807 F.3d 359, 374 (1st Cir. 2015), and we find none.

Ayala's sentencing proceeding began with three witnesses speaking on Ayala's behalf. The first was Ayala's fiancée, who stated at the start of her testimony at the proceeding that she was nervous and that she did not know what to say. The sentencing judge at that point stated: "You want to tell me he is a swell guy."

Ayala contends that this one statement by the sentencing judge demonstrates bias toward him and thus that his sentence cannot stand. But, read in the context of the transcript of the sentencing proceeding as a whole, see United States v. Lanza-Vázquez, 799 F.3d 134, 143 (1st Cir. 2015), the statement at most reflects a perhaps ill-advised attempt by the sentencing judge to put a witness at ease. Indeed, at the same sentencing proceeding and over the government's objection, the District Court granted Ayala's request for a continuance of several weeks so that he would have an additional opportunity to rebut the challenged findings regarding drug quantity. Thus, Ayala has failed to show judicial bias, see Liteky v. United States, 510 U.S. 540, 555-56 (1994), let alone met his burden to show a "clear or obvious" instance of it, as is required by the plain error standard, United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001).

## IV.

For these reasons, we **affirm**.