# United States Court of Appeals
### For the Eighth Circuit

_____

No. 21-1354
_____

United States of America

*Plaintiff - Appellee*

v.

Joshua Braman

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis
_____

Submitted: January 10, 2022
Filed: May 2, 2022
_____

Before LOKEN, GRUENDER, and ERICKSON, Circuit Judges.
_____

LOKEN, Circuit Judge.

Joshua Braman pleaded guilty to being a felon in possession of a firearm. 18 U.S.C. §§ 922(g)(1), 924(a)(2). He consented to a videoconference sentencing hearing, which he attended remotely. During the hearing, the district court[1] twice

_____

[1]The Honorable Stephen R. Clark, United States District Judge for the Eastern District of Missouri.

muted Braman's audio participation. Braman appeals, arguing the mutings violated his right to counsel and his right to meaningful allocution, and that his sentence is procedurally flawed and substantively unreasonable. We affirm.

## I. Muting Issues

Braman's Presentence Investigation Report ("PSR") described his offense conduct. His girlfriend, B.H., corroborated by two witnesses, accused him of trapping her in a stolen car, repeatedly punching her and striking her in the face with a shotgun, and threatening to "drive to the river, shoot her and dump her body." When police arrested Braman, they found a sawed-off shotgun in the stolen car parked outside his residence. Braman admitted stealing the car and knowingly possessing the sawed-off shotgun but denied assaulting B.H. "If I had whipped her ass with a shotgun," Braman claimed, "she would be a vegetable right now. She wouldn't be alive." He further asserted, "whoever assaulted her should have done a better job of beating her." Before the sentencing hearing, Braman accepted the PSR without objection, agreeing the government could prove its findings by a preponderance of the evidence but not admitting "he is responsible for the alleged conduct" because state criminal charges were pending. The PSR determined that his advisory guidelines sentencing range exceeded the statutory maximum sentence.

At the videoconference hearing, after the district court heard arguments from counsel, Braman provided a short allocution:

> I really don't know what to say. I feel like this is -- I feel like there's really no reason to even try. This is . . . what I feel like the United States does. . . . I'm at the mercy of the Court, you know. I wish I had never broken the law. That's all I've got to say.

The court then adopted the PSR as its findings of fact and conclusions of law and outlined the § 3553(a) sentencing factors. As the court restated the PSR's summary

of the assault and Braman's admission -- "If I had whipped her ass with a shotgun, she would be a vegetable right now" -- Braman interrupted: "Because she lied about all of that. That's why I said that." The court responded, "That's not the time to [address] that now," and muted Braman, explaining "if there's anything you want to say, I will give you the opportunity to say something again later but not right now." Braman apologized and said, "I'll be quiet." The court continued its discussion of the § 3553(a) factors. It acknowledged mitigating factors noted in the PSR and in Braman's sentencing memorandum but concluded that a statutory maximum sentence was warranted.

After describing the terms of supervised release, the court unmuted Braman and gave him a second opportunity to speak. Braman asked if the court had read a letter from B.H. and again said B.H. lied about the assault. The court replied, "there was no letter in the file from B.H." Braman said, "Well there should have been. . . . This girl . . . doesn't want me to be here. . . . She is a scorned woman. She got mad. . . . We are in love. . . . The drugs is what got us into a fight that day." Braman's counsel cautioned him to stop talking. Braman apologized. The court again muted him "because he is out of line." The court asked counsel, "is there a letter from B.H. . . . that I was supposed to consider?" Counsel replied, "If I had wanted to present it to the Court for consideration, I would have. . . . It was my intention not to."

On appeal, Braman argues the district court committed plain and structural error violating his Sixth Amendment right to counsel and his right to meaningful allocution, when he was muted twice during the sentencing hearing. Because Braman failed to object during the hearing, we review for plain error. See United States v. Harris, 964 F.3d 718, 722 (8th Cir. 2020), cert. denied, 141 S. Ct. 2530 (2021) (right to counsel); United States v. Thurmond, 914 F.3d 612, 614 (8th Cir. 2019) (right to allocution). "In the sentencing context, an error is prejudicial only if the defendant proves a reasonable probability that he would have received a lighter sentence but for the error." United States v. Molnar, 590 F.3d 912, 915 (8th Cir. 2010) (citation

omitted). Based on the sentencing record, we conclude this novel contention is without merit.

      1. Right to Counsel. Braman was physically present throughout the sentencing hearing. The Sixth Amendment Confrontation Clause guarantees "the accused's right to be present in the courtroom at every stage of his trial." Illinois v. Allen, 397 U.S. 337, 338 (1970). Rule 43(a)(3) of the Federal Rules of Criminal Procedure confirms that the right to be present extends to sentencing. For obvious reasons, Congress in § 15002(b)(2)(A) of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act")[2] expressly authorized videoconference sentencing hearings, with the consent of the defendant. This procedure balances the defendant's right to be sentenced "without unnecessary delay," Fed. R. Crim. P. 32(b)(1), with the COVID health risk that conducting secure hearings in open court would pose for all involved. Braman's consent to a remote sentencing hearing at which he was present by audio and video conferencing waived any objection to this procedure.[3]

      The right to be present at trial implicates the Sixth Amendment right to counsel, as "[t]he defendant's ability to communicate with counsel in court remains one of the defendant's primary advantages of being present at the trial." Moore v. Purkett, 275 F.3d 685, 688 (8th Cir. 2001) (quotation omitted). Congress recognized this in the CARES Act when it provided that "[n]othing in this subsection shall obviate a defendant's right to counsel under the Sixth Amendment." § 15002(b)(7).

---

[2]Pub. L. No. 116-136, 134 Stat. 281, 527-29 (2020).

[3]Prior to the CARES Act, the Fifth Circuit concluded that videoconferencing does not satisfy Rule 43(a)(3)'s physical presence requirement. United States v. Navarro, 169 F.3d 228, 235 (5th Cir.1999); see United States v. Lawrence, 248 F.3d 300 (4th Cir. 2001). We need not address this issue.

Braman argues that the muting infringed his ability to communicate with counsel, but he does not explain how. In seeking a favorable sentence, communications between defendant and counsel are needed *before* the sentencing hearing to develop mitigating factors, consider objections to aggravating facts in the PSR, and often, as in this case, prepare a sentencing memorandum. Braman was obviously involved in this process because his second allocution referred to a letter from victim B.H., and counsel advised the court that withholding the letter was a deliberate choice of counsel. Nor is there any basis to infer that the muting interfered with Braman's need to consult counsel during the hearing. At no point did he signal -- by waving in front of the camera as instructed by the court at the start of the hearing -- that he had additional thoughts to share or a need to confer with counsel, who argued on his behalf regarding the issues discussed while he was muted.

The right to be physically present *at trial* can be lost if the defendant "insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom." Allen, 397 U.S. at 343; see United States v. Hellems, 866 F.3d 856, 864-65 (8th Cir. 2017); Fed. R. Crim. P. 43(c)(1)(C). However, "behavior that is merely disruptive is insufficient under Allen to justify removal" because the defendant's "constitutional right to be present at his trial includes the right to be an irritating fool in front of a jury of his peers." United States v. Ward, 598 F.3d 1054, 1058-59 (8th Cir. 2010) (quotation omitted). Here, Braman argues his interruptions were merely "an insignificant breach of courtroom etiquette."

What this argument ignores is context -- we are reviewing a sentencing proceeding during which Braman was not physically removed. Unless a defendant represented by counsel chooses to testify, his role at a sentencing hearing is typically limited to answering the court's inquiries and allocution. The Rule 43(a)(3) right to be present is not the right to interrupt when the district court is explaining its application of the § 3553(a) sentencing factors to create an adequate record should

the sentence be appealed. As no witness was testifying and Braman did not object factually to the PSR, the Confrontation Clause was simply not at issue. We agree with the Fifth Circuit that, "[u]nlike the right to be present at trial which stems from the Sixth Amendment's Confrontation Clause, the right to be present at proceedings that lack testimony (usually true of sentencings) comes from the Fifth Amendment's Due Process Clause." United States v. Diggles, 957 F.3d 551, 557 (5th Cir.), cert. denied, 141 S. Ct. 825 (2020). The due process issue is "whether a defendant's 'presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge.'" Id. at 558 (quotation omitted); cf. United States v. Gagnon, 470 U.S. 522, 526 (1985).

Here, Braman's muting did not compromise his right to due process. The matters discussed while he was muted were the § 3553(a) sentencing factors, the conditions of his supervised release, and his right to appeal. The muting did not adversely affect counsel's ability to urge a favorable sentence. In these circumstances, the district court did not err, much less plainly err, in muting Braman during portions of the hearing when he would not be expected to speak. Cf. United States v. Gunter, 631 F.2d 583, 589 (8th Cir. 1980) (due process "does not assure 'the privilege of presence when presence would be useless, or the benefit but a shadow'").

2. Allocution. We likewise conclude the second muting did not violate Braman's right to meaningful allocution. See Fed. R. Crim. P. 32(i)(4)(A)(ii). "The failure to give a defendant the right of allocution is clearly error and must be reversed." United States v. Caffey, 351 F.3d 804, 805 (8th Cir. 2003) (quotation omitted). Here, there was no failure. The court afforded Braman *two* opportunities to speak. The issue is meaningful allocution.

Citing United States v. Hoffman, 707 F.3d 929, 938 (8th Cir. 2013), Braman argues he was "blindsided" when the court made observations about his criminal history and questioned his acceptance of responsibility after the initial allocution and

while he was muted. But Hoffman does not mandate a second opportunity to respond. There is "no error as long as the court gives the defendant an opportunity to speak prior to the imposition of sentence." Id. at 937-38. Here, the district court provided Braman a second opportunity. Although the second allocution came after the court announced the sentence, the additional allocution "retain[ed] the potential to affect the sentence." United States v. Hernandez-Espinoza, 890 F.3d 743, 747 (8th Cir. 2018). When Braman referred to a letter from B.H. the court had not seen, its subsequent colloquy with counsel confirms that Braman's second allocution "could still have swayed the district court to change the sentence." Id. Again, the second muting was not error, much less plain error.

## II. Sentencing Issues

Braman also appeals his sentence. In discussing the § 3553(a) factors, the district court noted the PSR credited Braman for accepting responsibility by his guilty plea, but said that "statements that Mr. Braman has made here today certainly do not reflect an acceptance of responsibility or a full acceptance of responsibility in this situation." However, the court explained, "I don't need to decide the issue of acceptance of responsibility other than to note those facts for the record at this point." Braman argues the court committed procedural error when it failed to properly credit him for accepting responsibility. Braman failed to object at sentencing. Even if we review for plain error, there was no error. "A defendant who enters a guilty plea is not *entitled* to an adjustment under [U.S.S.G. § 3E1.1] as a matter of right." U.S.S.G. § 3E1.1, cmt. n.3 (emphasis added). Here, the district court *did* credit Braman for acceptance of responsibility. It accepted the PSR's findings of fact and conclusions of law, which included a three-level reduction for acceptance of responsibility. But the end result was still an advisory range above the statutory maximum.

Braman further argues his 120-month sentence is substantively unreasonable. A sentence may be substantively unreasonable if it is based on a "clear error of

judgment." United States v. Hubbs, 18 F.4th 570, 572 (8th Cir. 2021). Braman argues the district court committed a clear error of judgment when it imposed a statutory maximum sentence because Braman's criminal history and statements denying the assault demonstrated a "high propensity for violence." We disagree.

The district court stated that Braman's comments about the assault "show[ed] violent propensities." His extensive criminal history -- "a 20-year string of ongoing criminal conduct" -- further demonstrated a high propensity for violence. The court noted that Braman's multiple past crimes and convictions involved violence, including a previous instance of domestic violence. The court's evaluation of his criminal history was supported by Braman's callous and threatening statements to police in denying he assaulted B.H. -- "If I had whipped her ass with a shotgun, she would be a vegetable right now. She wouldn't be alive." The 120-month statutory maximum sentence was below the advisory guidelines range of 130 to 162 months. The court did not abuse its substantial discretion in refusing to vary downward from the statutory maximum. See, e.g., United States v. Thibeaux, 784 F.3d 1221, 1227 (8th Cir. 2015) (affirming statutory maximum sentence for felon-in-possession offender with "extensive criminal history").

The judgment of the district court is affirmed.
_____